IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

**FILED**

NOV - 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| IN RE SUBPOENA TO THE COMMODITY FUTURES TRADING COMMISSION | ) ) ) ) |
| | ) ) ) |
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, AND RICHARD HERSHEY | ) |
| v. | |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, AND JOHN DOES 1-100 | ) ) ) |

CASE NUMBER  1:06MS00489

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Miscellanous

DATE STAMP: 11/07/2006

## CITADEL INVESTMENT GROUP, L.L.C.'S MOTION TO QUASH

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Citadel Investment Group, L.L.C. ("Citadel") moves to quash the September 5, 2006 subpoena (the "Subpoena") for the production of documents that was issued through this Court and served on the U.S. Commodity Futures Trading Commission ("CFTC") in connection with *Hershey et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681, pending in the U.S. District Court for the Northern District of Illinois.

Citadel is a non-party to the underlying litigation. Nevertheless, Plaintiffs seek sensitive and confidential information from the CFTC regarding Citadel that is entirely irrelevant to the underlying litigation. Moreover, the Subpoena's expansive requests have the effect of undermining the trial court's efforts to limit the scope of third-party discovery in the Illinois

litigation. Accordingly, Citadel requests that this Court quash the Subpoena as to documents and information relating to Citadel.

## BACKGROUND

On September 5, 2006, Plaintiffs caused the Subpoena to be served on the CFTC in Washington D.C. A copy of the Subpoena is attached hereto as Exhibit A. The Subpoena relates to the Plaintiffs' lawsuit alleging that Pacific Investment Management Company LLC and PIMCO Funds (collectively "the PIMCO defendants") manipulated and aided and abetted the manipulation of prices of June 2005 Ten-year Treasury Note futures contracts ("the June 2005 Contract") on the Chicago Board of Trade, and the cheapest-to-deliver Treasury Note underlying the June 2005 contract (the "February 2012 Note"), in violation of federal statutes.[1] By Plaintiffs' own description of their allegations, the alleged manipulation of the prices relating to the June 2005 contracts by PIMCO defendants is at the core of their suit.[2] *See* Plaintiffs' Motion to Compel Rule 45 Discovery from Goldman Sachs & Company at 2, Hershey et al. v. Pacific Inv. Mgmt. Co. LLC, et al., No. 05-4681 (N.D. Ill. August 4, 2006) [Docket No. 104].

Pursuant to a February 10, 2006 subpoena Plaintiffs issued to Citadel, Citadel already has produced to Plaintiffs documents relating to the June 2005 contract and the February 2012 Note.[3]

## ARGUMENT

The Subpoena served by Plaintiffs upon the CFTC is part of a broad and indiscriminate fishing expedition.[4] It demands that the CFTC produce, among other things, *all* documents

---

[1] *See generally* First Amended Consolidated Class Action Complaint, Hershey et al. v. Pacific Inv. Mgmt. Co. LLC, et al., No. 05-4681 (N.D. Ill. May 30, 2005) [Docket No. 80].

[2] Citadel is not a named defendant and there is no suggestion that Citadel was complicit with the alleged manipulation. Citadel is merely a non-party witness in the underlying litigation.

[3] The documents produced by Citadel were marked "Confidential" pursuant to the court-entered protective order in the matter. Stipulation and Protective Order, Hershey et al. v. Pacific Inv. Mgmt. Co. LLC, et al., No. 05-4681 (N.D. Ill. April 3, 2006).

relating to large trader report forms concerning 10-year Treasury Note futures contracts for January through September 2005, *all* documents relating to communications between the CFTC *and others* concerning the June 2005 Contract, the February 2012 Note, and/or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, and *all* documents, data, information, correspondence and/or records concerning the holdings or positions in 2005 Futures Contracts held by *market participants* from January through September 2005.

Such information includes Citadel's proprietary trading information, market positions, and trading strategies, as well as other confidential and highly sensitive information about Citadel that is entirely irrelevant to the Plaintiffs' claims against the PIMCO defendants. In particular, the Subpoena would render public emails and other communications between the CFTC and Citadel in which Citadel, after requesting confidential treatment, disclosed to the CFTC its market positions, future intentions, and trading strategies. The harm that would be suffered by Citadel and its investors through the release of this information would be extreme, and completely disproportionate to any probative value such information might have to Plaintiffs' claims against PIMCO.

I.    **The Subpoena Served Upon the CFTC Calls for the Production of Citadel's Confidential and Proprietary Information that is Irrelevant to the Underlying Litigation**

This Court has the authority to quash a subpoena to a non-party witness that compels production of documents that are irrelevant to the underlying action. *See, e.g. North Carolina Right to Life, Inc., et al. v. Leake, et al.*, 231 F.R.D. 49 (D.D.C. 2005). A non-party such as Citadel has standing to object to the relevance of the Subpoena. *See, e.g., Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D. Cal. 1995); 9 James

---

[4]    Similarly expansive subpoenas that are not targeted to obtain relevant, non-confidential or proprietary information, were also served on the Chicago Board of Trade, the U.S. Department of Treasury, and the Federal Reserve Bank of New York.

Moore, *Moore's Federal Practice* § 45.50[3] (3d Ed. 2006) ("[W]hen the privileges or privacy interests of a third person are implicated by a subpoena, the third person may have a right to move to quash or modify the subpoena").

The fact that Plaintiffs are seeking information from the CFTC, and not directly from Citadel, should make no difference to the Court's analysis. The threatened injury to Citadel of having its proprietary and confidential information in the public domain is the same. *Falicia v. Advanced Tenant Services*, Inc., 235 F.R.D. 5 (D.D.C. 2006) (*citing* Federal Rule of Civil Procedure 45(c)(3)(B)(i), which allows a court to quash a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information"); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) ("Rule 45(c)(3)(B) provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty.").

The CFTC has a regulatory obligation to maintain market integrity by monitoring trading and conducting market surveillance. *See* 7 U.S.C. § 5. In furtherance of that obligation, the CFTC collects information about traders' market activity through large trader reports, and by requesting information from large market participants concerning their futures and cash positions, future intentions, and trading strategies. As a market participant, Citadel provides the CFTC with highly confidential and proprietary information regarding its business strategies and future plans in response to CFTC requests. Citadel provides this information to the CFTC with the understanding that it will be maintained strictly confidential.

It is critical that the confidentiality of information collected through the CFTC's market surveillance activities be protected. To do otherwise would undermine the CFTC's ability to maintain market integrity by jeopardizing the candor with which market participants

communicate with the CFTC. There is a strong public interest in protecting the effectiveness of this regulatory process and courts have routinely protected similar public interests by limiting discovery of information, even in the absence of formal privilege.[5] *See, e.g., Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985).

In this case, Plaintiffs have not established the relevancy of the information sought, let alone a particularized need justifying the disclosure of highly confidential and sensitive information compiled by the CFTC in fulfillment of its public trust. In fact, Plaintiffs can not establish relevancy or a need for the information as: (1) Citadel is not a party to the underlying litigation; and (2) any potentially relevant information sought from the CFTC is available from other sources that do not present the same public policy concerns.

Plaintiffs should not be allowed to sift through the files of government entities and regulators for information about non-parties, such as Citadel, that is entirely irrelevant to the underlying litigation. Public release of the requested information would undermine Citadel's market position and the market positions of its investors. Accordingly, disclosure of the information would likely result in significant economic losses by Citadel and its investors that are completely disproportionate to any probative value such information might have to any underlying litigation.

## II. Plaintiffs' Subpoena Has the Effect of an End-Run Around Prior Adverse Rulings Limiting the Scope of Third-Party Discovery in the Underlying Litigation

Plaintiffs already have been admonished in the underlying action about misuse of subpoenas to non-party witnesses. In February 2006 and July 2006, Plaintiffs served subpoenas on Goldman Sachs & Company ("Goldman") in the U.S. District Court for the Northern District

---

[5]    In the Illinois action the Chicago Board of Trade has taken the position in response to a similar subpoena that trading information of the type sought by Plaintiffs is protected by a qualified privilege. Chicago Board of Trade's Response to Plaintiffs' Motion to Compel Rule 45 Discovery, Hershey et al. v. Pacific Inv. Mgmt. Co. LLC, et al., No. 05-4681 (N.D. Ill. August 4, 2006) [Docket No. 167].

of Illinois. Goldman previously had provided Plaintiffs with an extensive production of documents concerning activity in PIMCO's accounts at Goldman in the relevant securities. Plaintiffs, however, were unsatisfied and demanded by subpoena the production of *all* documents for *all* trading activity in 10-year U.S. Treasuries Notes by *all* Goldman customers during the six-month period from March 15 through September 30, 2005. Response of Goldman, Sachs & Co. to Plaintiffs' Motion to Compel Rule 45 Discovery at 2, Hershey et al. v. Pacific Inv. Mgmt. Co., No. 05-4681 (N.D. Ill. August 28, 2006) [Docket No. 121]. Goldman objected to both subpoenas under Federal Rule of Civil Procedure 45(c)(3) and Plaintiffs subsequently filed a Motion to Compel Rule 45 Discovery.

After reviewing the parties' briefs, Magistrate Judge Mason denied Plaintiffs' Motion to Compel and admonished Plaintiffs for misuse of a non-party witness subpoena:

> Plaintiffs are attempting to embark on a *classic fishing expedition* and have failed to demonstrate that the non-PIMCO related discovery is relevant. Goldman Sachs is not a party to this case, and we decline to compel Goldman Sachs to collect, review and produce sensitive documents regarding its non-PIMCO accounts *based upon Plaintiffs' pure speculation.*

Order of U.S. Magistrate Judge Michael T. Mason, Hershey et al. v. Pacific Inv. Mgmt. Co., No. 05-4681 (N.D. Ill. September 11, 2006) (emphasis added) [Docket No. 138]. U.S. District Court Judge Guzman subsequently affirmed Magistrate Judge Mason's order denying Plaintiffs' Motion to Compel, stating:

> Compliance with plaintiffs' subpoenas would be *unreasonable and oppressive* because plaintiffs sought to compel non-party Goldman to produce all documents for all trading activity in 10-year U.S. Treasury Notes by all of its customers (including non-PIMCO customers) during the six-month period between March 15 through September 30, 2005, which includes thousands of customers and potentially hundreds of thousands of trades.

Order of U.S. District Court Judge Ronald A. Guzman, Hershey et al. v. Pacific Inv. Mgmt. Co., No. 05-4681 (N.D. Ill. October 5, 2006) [Docket No. 154] (emphasis added).

Just like the Goldman subpoenas, Plaintiffs have served invasive discovery requests on the CFTC that seek commercially sensitive documents, trade information, and trade strategies relating to non-parties. Indeed, the Subpoena is not targeted to obtain documents and information relating only to the PIMCO defendants. Rather, in request after request it calls for the production of "all documents" for market participants in the subject Treasury notes and futures contracts. Moreover, the Subpoena seeks not only trading information, but also correspondence, investigation materials, and other sensitive records with no exception for confidential or proprietary information of innocent non-party witnesses. The insidious nature of the Subpoena is clearly illustrated by Request Number 4, which explicitly requests "[a]ll documents constituting, referring, relating to, or evidencing communications with *Citadel* [i.e., a non-party] or any employee or agent of the foregoing relating to 2005 Futures Contracts or the cheapest to deliver notes on 2005 Futures Contracts."

In light of the foregoing, the Subpoena has the effect of an end-run around the District Court's efforts in the underlying litigation to control the scope of Plaintiff's non-party discovery.

## CONCLUSION

The Subpoena is overly broad, calls for the production of irrelevant, confidential and proprietary information, and undermines the trial court's efforts to control discovery. Plaintiffs should not be allowed to circumvent the Northern District of Illinois' reprimand against unduly burdensome fishing expeditions in an attempt to obtain highly sensitive information relating to Citadel and its investors. Based on the foregoing, we respectfully request this Court to grant Citadel's Motion to Quash Plaintiffs' subpoena as to documents and information relating to Citadel.

November 7, 2006

Respectfully submitted,

William M. Sullivan, Jr. (Bar No. 427269)
Kevin M. King (Bar No. 456841)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 282-5000
Fax:  (202) 282-5100

*Counsel for Citadel Investment Group, L.L.C.*

AO 88 (Rev. 1/94) Subpoena in a Civil Case – SDNY WEB 4/99

**FILED**

NOV – 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Issued by the**
**UNITED STATES DISTRICT COURT**

_____ DISTRICT OF _____ COLUMBIA

JOSEF A. KOHEN, BREAKWATER TRADING LLC,
and RICHARD HERSHEY

v.

PACIFIC INVESTMENT MANAGEMENT COMPANY LLC,
PIMCO FUNDS, and JOHN DOES 1-100

**SUBPOENA IN A CIVIL CASE**

Case Number: ¹  05 C 4681
Northern District of Illinois

OFC. THE SECRETARIAT     2006 SEP 11 AM 9:19     RECEIVED C.F.T.C.

Mays Pickals Clement

TO:  Commodity Futures Trading Commission
Secretary of the Commission
Three Lafayette Centre, 1155 21st Street, NW, Washington DC 20581

[ ]  YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

[ ]  YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

[ X ]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE EXHIBIT A ATTACHED.

OFFICE OF GENERAL COUNSEL     2006 SEP 11 AM II:03     RECEIVED C.F.T.C.

| PLACE | DATE AND TIME |
|---|---|
| Anthony F. Fata (312.782-4880) c/o Esquire Deposition Services, 1020 19th Street NW, #620A Washington, DC 20036 | September 12, 2006 10:00 A.M. |

[ ]  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*  ATTORNEY FOR PLAINTIFF | September 5, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
ANTHONY FATA, MILLER FAUCHER & CAFFERTY LLP
30 NORTH La SALLE STREET, CHICAGO, IL 60602
(312) 782-4880

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE                                    _____
                                                       SIGNATURE OF SERVER

                                                       _____
                                                       ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**
**Commodity Futures Trading Commission**

## I.    DEFINITIONS

1.    "CBOT" means the Chicago Board of Trade.

2.    "U.S. Treasury" means the United States Department of the Treasury.

3.    "United States Ten Year Treasury Note" means a United States Government-debt

security maturing after August 2011 and prior to November 2015.

4.    "February 2012 Note" means a United States Ten Year Treasury Note maturing in

February 2012.

5.    "August 2012 Note" means United States Ten Year Treasury Note maturing in August

2012.

6.    "March 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures

contract deliverable in March 2005.

7.    "June 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract

deliverable in June 2005.

8.    "September 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures

contract deliverable in September 2005.

9.    "December 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures

contract deliverable in December 2005.

10.    "2005 Futures Contracts" means the March 2005 Futures Contract, June 2005 Futures

Contracts, September 2005 Futures Contract and/or December 2005 Futures Contract.

11.    "PIMCO" means Pacific Investment Management Company LLC, the institutional

money manager specializing in fixed income management which is incorporated in the state of

Delaware, and who is headquartered in Newport Beach, California.  PIMCO also means any

entity in which PIMCO, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which PIMCO manages.

12.    "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered open-ended management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which PIMCO Funds manages.

13.    "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which Citadel manages.

14.    "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda, notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

15.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

17.    "Person" means any natural person or any business, legal or governmental entity or association.

18.    "You" or "your" means the recipient of this subpoena *duces tecum*.

19.    "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2

**II.    RELEVANT PERIOD**

The relevant period, unless otherwise indicated, is from January 1, 2005 to September 30, 2005, and shall include all documents and information that relate, in whole or in part, to the relevant period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior, or subsequent to the relevant period.

**III.    INSTRUCTIONS**

1.    These discovery requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto.

2.    Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3.    If any portion of any document is responsive to any request, then the entire document must be produced. If any requested document cannot be produced in full, please produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document.

4.    Documents shall be produced in the medium in which they are kept in the ordinary course of business, *e.g.*, all documents and data that are maintained in electronic form shall be produced in their native format, including all available back-up or disaster recovery materials, but shall not be converted to any other format such as a tiff image or PDF file. All documents produced in electronic format must include all attendant meta-data. All electronic mail shall be provided in its native format (e.g., .pst, .nsf, .xls, .doc, etc.).

3

5.     Documents shall be produced in the order in which they appear in your files, and documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

6.     If any responsive document was, but is no longer, in the possession or subject to the control of the responding party, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. For each instance, please state the date or approximate date of such disposition and explain the circumstances surrounding such disposition.

7.     If any responsive document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, confidentiality or trade secret, please set forth separately with respect to each such document: (a) the nature of the privilege or other rule relied upon in withholding production of the document; (b) the type of document (e.g., letter, memorandum, etc.); (c) the general subject matter of the document; (d) the date of the document; and (e) such other information as is sufficient to identify the document for a *subpoena duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

8.     If a portion of any responsive document is protected from disclosure by privilege, work product or any other reason, such document must be produced with redaction of the portion claimed to be protected.

9.     Provide each document in English, accompanied by an English translation, and provide a glossary of all terms of art and abbreviations used.

IV.     **DOCUMENTS TO BE PRODUCED**

4

1.      All documents constituting, referring, relating to, evidencing, or sufficient to show large trader report forms concerning or relating to United States Ten Year Treasury Note futures contracts for the period during the relevant period.

2.      All documents constituting, referring, relating to, evidencing, or sufficient to show the daily position of PIMCO and/or PIMCO Funds with any CBOT clearing members or otherwise in United States Ten Year Treasury Note futures contracts during the relevant period.

3.      Documents sufficient to show (a) the names and addresses of CBOT clearing members during the relevant period, and (b) the names and addresses of customers who traded June 2005 Futures Contracts between May 13 and June 30, 2005 (including by making or taking delivery).

4.      All documents constituting, referring, relating to, or evidencing communications with Citadel, PIMCO, PIMCO Funds, or any PIMCO related entity or any employee or agent of the foregoing relating to 2005 Futures Contracts or the cheapest to deliver notes on 2005 Futures Contracts.

5.      All documents reflecting, calculating or relating to the deliverable or available supply or "float" of cheapest to deliver, or other notes available to be delivered on 2005 Futures Contracts, or to the amount of cheapest to deliver or other deliverable notes held by PIMCO, PIMCO Funds, or other market participants.

6.      All documents constituting, referring, relating to or evidencing communications between the Commodity Futures Trading Commission and others concerning the June 2005 Futures Contract and/or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, those relating to a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary

5

prices, price movements, price relationships, liquidation patterns, trading activity and/or deliveries for such contracts and notes.

7.    All documents constituting, referring, relating to or evidencing communications between the CBOT and others concerning the June 2005 Futures Contract or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary prices, price movement, or price relationships or liquidation patterns, trading activity and/or deliveries of such contracts and notes.

8.    All documents concerning PIMCO's and/or PIMCO Funds' market-on-close transactions on the last day of trading for the June 2005 Futures Contracts, or June 21, 2005, during the relevant period.

9.    All documents concerning and/or sufficient to identify time and sales of futures trading for June 2005 Futures Contracts during the relevant period, including, but not limited to, a daily transaction log in chronological order.

10.    All documents concerning and/or sufficient to identify a record of deliveries for June 2005 Futures Contracts during the relevant period.

11.    All documents and/or communications concerning PIMCO's and/or PIMCO Funds' repurchase transactions and/or reverse repurchase transactions during the relevant period.

12.    All documents concerning and/or sufficient to identify short trading of June 2005 Futures Contract during the relevant period.

13.    All documents concerning a "squeeze," "corner", "manipulation", and/or "congestion" of June 2005 futures contracts or the February 2012 Notes during the relevant period.

6

14.     All documents concerning market-on-close buy orders placed by PIMCO and/or PIMCO

Funds of the June 2005 Futures Contracts and/or the February 2012 Notes during the relevant

period.

15.     All documents concerning disciplinary action take in connection with orders on the last

day of trading of the June 2005 Futures Contract, or June 21, 2005 during the relevant period,

including, but not limited to, records of disciplinary action against:

        a.     Floor Brokers;

        b.     Futures Commission Merchants;

        c.     Commodity Exchange Members;

        d.     Clearing Members; or

        e.     anyone other individual and/or entity.

16.     All documents, data and/or information concerning "general collateral" overnight

repurchase rates in connection with U.S. Treasury securities during the relevant period.

17.     All documents, data and/or information concerning "general collateral" term repurchase

rates, including, but not limited to, documents sufficient to identify the term of the transaction, in

connection with U.S. Treasury securities during the relevant period.

18.     All documents, data and/or information concerning "special" overnight repurchase rates

for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the

transaction, the maturity date and the CUSIP number, including, but not limited to, transactions

collateralized by the February 2012 and August 2012 Notes, during the relevant period.

19.     All documents, data and/or information concerning "special" term repurchase rates for

repurchase transactions collateralized by U.S. Treasury securities specifying the term of the

7

transaction, the maturity date and the CUSIP number, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

20.    Any documents, data, information, correspondence, and/or records concerning "failed" deliveries on repurchase transactions collateralized by U.S. Treasury securities, including for each "failed" delivery, the maturity and CUSIP of the security, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes during relevant period.

21.    All documents, data, information, correspondence and/or records concerning the holdings or positions in U.S. Treasury securities deliverable against 2005 Futures Contracts held by market participants during relevant period.

22.    All documents, data, information, correspondence and/or records concerning the holdings or positions in 2005 Futures Contracts held by market participants during the relevant period.

23.    All documents, data, information, correspondence and/or records concerning the prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

24.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the relative prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

25.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the valuation of 2005 Futures Contracts relative to (a) the value of other futures contracts, (b) the prices of cash Treasury securities, and (c) other fixed income instruments (e.g., swap yields) during relevant period.

26.    All documents, information, correspondence and/or records concerning the intentions (make/take delivery vs. liquidate futures positions) of participants in the 2005 Futures Contracts during the relevant period.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 2.5
### Eastern Division

**FILED**

NOV − 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Richard Hershey, et al.

                    Plaintiff,

v.

                     Case No.: 1:05−cv−04681
                     Honorable Ronald A.
                     Guzman

Pacific Investment Management Company LLC,
et al.

                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, September 11, 2006:

     MINUTE entry before Judge Michael T. Mason : Before the Court is Plaintiffs' Motion to Compel Rule 45 Discovery from Goldman Sachs & Company [104] ("Motion"). After reviewing the parties' briefs, the Motion is denied. Plaintiffs argue that PIMCO's brokers "... may have been trading along with PIMCO to fan flames or increase the artificial effect of PIMCO's manipulative conduct." Plaintiffs are attempting to embark on a classic fishing expedition and have failed to demonstrate that the non−PIMCO related discovery is relevant. Goldman Sachs is not a party to this case, and we decline to compel Goldman Sachs to collect, review and produce sensitive documents regarding its non−PIMCO accounts based upon Plaintiffs' pure speculation. For the same reason, we decline to compel Goldman Sachs to designate a 30(b)(6) witness to testify about non−PIMCO accounts. Accordingly, Plaintiffs' Motion to Compel is denied. [104]Goldman Sachs' Motion for Leave to File a Sur−Reply Brief is moot.[135] No appearance required on the motion hearing date, September 12, 2006. Mailed notice(tlp)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | **FILED** |
|---|---|---|---|
| **CASE NUMBER** | 05 C 4681 | **DATE** | NOV - 7 2006 / 10/5/2006 |
| **CASE TITLE** | Hershey et al. vs. Pacific Inv. Mgmt. Co. LLC et al. | | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

**DOCKET ENTRY TEXT**

For the reasons provided in this minute order, the Court rejects plaintiffs' objections to Magistrate Judge Michael T. Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman Sachs & Co. ("Goldman") and adopts the order in full.

■[ For further details see text below.]                                          `Docketing to mail notices.

---

## STATEMENT

The Court rejects plaintiffs' objections to Magistrate Judge Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman because plaintiffs fail to establish that his order was clearly erroneous or contrary to law. Compliance with plaintiffs' subpoenas would be unreasonable and oppressive because plaintiffs sought to compel non-party Goldman to produce all documents for all trading activity in 10-year U.S. Treasury Notes by all of its customers (including non-PIMCO customers) during the six-month period between March 15 through September 30, 2005, which includes thousands of customers and potentially hundreds of thousands of trades. The magistrate judge did not err in finding that plaintiffs failed to demonstrate the "relavance [sic] of the non-PIMCO documents" (see Pl.'s Objections at 3) because such relevance is based on plaintiffs' speculation that "PIMCO's brokers may have been trading along with PIMCO to fan the flames or increase the artificial effect of PIMCO's manipulative conduct" (id. at 4). Finally, plaintiffs do not provide any detailed analysis in support of their final argument that the magistrate judge erred in refusing to compel Goldman to designate Rule 30(b)(6) witnesses or point to the particular legal error of which they complain. Thus, their final objection is waived. Even if the Court were to hold that plaintiffs' final objection had not been waived, which it does not, given the above findings, it was well within the magistrate judge's discretion to refuse to compel Goldman to designate Rule 30(b)(6) witnesses. For these reasons, the Court adopts Magistrate Judge Mason's order in full.

| | Courtroom Deputy Initials: | LC/LG |
|---|---|---|

# CERTIFICATE OF SERVICE

I, Kevin M. King, one of the attorneys for Citadel Investment Group, L.L.C., hereby certify that on November 7, 2006 I served a copy of Citadel Investment Group, L.L.C.'s Motion to Quash via Federal Express on:

Marvin A. Miller, Esq.
Jennifer W. Sprengel, Esq.
Anthony F. Fata, Esq.
Miller Faucher and Cafferty LLP
30 North LaSalle Street
Chicago, IL 60602

Christopher Lovell, Esq.
Gary S. Jacobson, Esq.
Merrick S. Rayle, Esq.
Craig Essenmacher, Esq.
Lovell, Steward Halebian LLP
500 Fifth Avenue
New York, New York 10110

Geoffrey M. Horn, Esq.
Vince Briganti, Esq.
Lowey Dannenberg Bemporad & Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, New York 10601

Louis F. Burke, Esq.
Louis F. Burke, P.C.
460 Park Avenue
New York, New York 10022

William J. Nissen, Esq.
Eric J. Grush, Esq.
Sidley Austin LLP
One Dearborn Street
Chicago, IL 60603

Michael T. Hannafan, Esq.
Michael T. Hannafan & Associates, Ltd.
One East Wacker Drive
Suite 1208
Chicago, IL 60601

David Kotler, Esq.
Dechert LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3, Suite 210
Lawrenceville, NJ  08648

Secretary of the Commission
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581

Kevin M. King