IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA TO THE )<br>COMMODITY FUTURES TRADING )<br>COMMISSION )<br>_____ ) | Misc. Case No. 1:06MS00489<br><br>Honorable Judge Colleen Kollar-Kotelly |
| )<br>JOSEF A. KOHEN, BREAKWATER )<br>TRADING LLC, AND RICHARD )<br>HERSHEY, )<br>             Plaintiffs, )<br>)<br>v. )<br>)<br>PACIFIC INVESTMENT )<br>MANAGEMENT COMPANY LLC, )<br>PIMCO FUNDS, AND JOHN DOES )<br>1-100, )<br>             Defendants. )<br>_____ ) | |

## RONIN CAPITAL, LLC'S MOTION TO QUASH

Non-party Ronin Capital, LLC ("Ronin"), pursuant to Fed. R. Civ. P. 45(c)(3), and by and through its counsel, MAYER, BROWN, ROWE & MAW, LLP, respectfully requests this Court to quash the September 5, 2006 document subpoena (the "Subpoena", Exhibit A hereto) issued by Josef A. Kohen, Breakwater Trading, LLC and Richard Hershey ("Plaintiffs") to non-party Commodity Futures Trading Commission (the "Commission") in the above-captioned case, to the extent the Subpoena seeks documents and information relating to Ronin's trading, market positions and/or trading strategies, which constitute Ronin's confidential commercial information.[1] In support of this Motion, Ronin states as follows:

---

[1] Although the Subpoena is dated September 5, 2006, Ronin did not learn of its existence until it received a letter from the Commission dated November 3, 2006 informing Ronin of the Subpoena and directing Ronin to file any objections it has to the Subpoena in this Court.

RECEIVED
NOV 1 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. In or around August 2005, Plaintiffs filed a putative class-action complaint in the U.S. District Court for the Northern District of Illinois, alleging that the PIMCO defendants manipulated the June 2005 Ten-Year Treasury Note futures contract (the "June '05 Contract) traded on the Chicago Board of Trade ("CBOT"), and the Treasury Note maturing in February 2012 (the "Feb. '12 Note"), which was the "cheapest to deliver" Note with respect to the June '05 Contract. Plaintiffs purport to represent a class consisting of all persons (excluding the PIMCO defendants or their affiliates) who purchased, between May 9, 2005 and June 30, 2005, a June '05 Contract to satisfy a "short" position in that Contract.

2. CBOT and the trading of futures and options contracts thereon are regulated by the Commission. As part of its market surveillance program, the Commission operates a comprehensive system of collecting information relating to market participants. Pursuant to rules promulgated under the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (the "Act"), the Commission collects market data and position information from exchanges, exchange clearing members, futures commission merchants ("FCMs"), foreign brokers and traders. 17 C.F.R. Parts 15 and 17.

3. The Commission's market surveillance program includes a comprehensive large-trader reporting system ("LTRS"), pursuant to which the Commission receives detailed daily reports from exchange clearing members, FCMs and foreign brokers (each a "reporting firm") showing the futures and options positions of traders that hold positions at or above specific reporting levels set by the Commission. 17 C.F.R. § 17.00. If, at the daily market close, a reporting firm has a trader with a position at or above the Commission's reporting level in any futures or options contract, the firm reports that trader's entire position in all futures and options contracts in that same commodity (*e.g.,* Ten-Year Treasury Notes), regardless of size. *Id.,* §§

15.01 and 15.03. In addition, the Commission may contact the trader directly and require that the trader file a more detailed report. *Id.*, Part 18.

4. Except under limited circumstances, the Commission is specifically prohibited under Section 8(a) of the Act, 7 U.S.C. § 12(a), from publicly disclosing any person's market positions, business transactions or trade secrets, including such information obtained as part of the Commission's LTRS. The strong public interest in maintaining the integrity of effective industry oversight by the Commission would clearly be undermined by disregarding this provision and making the fruits of the Commission's LTRS available to private litigants who wish to shortcut their own discovery efforts and instead reap the benefits or the Commission's ongoing, statutorily governed work. See *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (making similar observations in denying a motion to compel the National Association of Securities Dealers to produce documents in response to a non-party subpoena).

5. In the present action, the Subpoena seeks virtually every document in the Commission's possession, custody or control, for the period from January through September 2005 (the "Subject Period"), relating not only to the June '05 Contract, but to all other Ten-Year Treasury Note futures contracts. The document requests in the Subpoena seek, for example, all large-trader report forms relating to Ten-Year Treasury Note futures contracts during the Subject Period (Request No. 1), and all documents concerning time and sales of futures trading for the June '05 Contract (Request No. 9).

6. Plaintiffs served a similar document subpoena on CBOT in the Northern District of Illinois, purporting to require it produce, *inter alia*, some of the same large-trader reports and trading information sought in the Subpoena to the Commission. In opposing Plaintiffs' Motion to Compel CBOT to produce such documents, CBOT filed a response cogently explaining that

Plaintiffs' request for several months' worth of large-trader reports for Ten-Year Treasury Note futures contracts in all expiration months "is overbroad":

> Plaintiffs seek to justify their request by stating that they want to "…understand and evaluate defendants' activities prior to amassing large positions in the June 2005 contract…" and "…to see what defendants did after taking delivery on an usually large amount of February 2012 notes to rebut defendants' claims that it [sic] continued to hold the February 2012 notes for investment purposes." This does not explain Plaintiffs' request for the large trader reports of all large traders. * * * If Plaintiffs want to obtain the large trader reports pertaining to defendants …, they can obtain them from the defendants' clearing firm or firms. The information contained therein should also be available directly from the defendants.[2]

The same holds true with respect to those portions of the Subpoena which Plaintiffs served on the Commission that seek confidential commercial information relating to other market participants, including Ronin.

7. Ronin was a large trader of Ten-Year Treasury Note futures contracts during the Subject Period. Accordingly, Ronin and reporting firms that carried or cleared Ronin's futures accounts provided the Commission with highly confidential and proprietary information regarding Ronin's trading and market positions during the Subject Period, which constitutes Ronin's confidential commercial information. That information was provided to the Commission with the understanding and expectation on Ronin's part – based, *inter alia*, on Section 8(a)(1) of the Act – that it would be maintained as strictly confidential and would not be publicly disclosed.

8. Neither the Subpoena nor any of the pleadings filed by Plantiffs or the PIMCO defendants refer to Ronin. However, the Subpoena seeks documents and information that, if produced, would reveal Ronin's proprietary trading information, market positions and trading

---

[2] Chicago Board of Trade's Response to Plaintiffs' Motion to Compel Rule 45 Discovery, at 5-6. The District Court for the Northern District of Illinois has not yet ruled on Plaintiffs' Motion to Compel Rule 45 Discovery from CBOT.

strategies. The economic harm that would be suffered by Ronin through the release of such documents and information to Plaintiffs (who compete against Ronin in trading Treasury Note futures contracts and related instruments) would be extreme, and completely disproportionate to any probative value such documents and information could possibly have in Plaintiffs' case against the PIMCO defendants.

9. As noted in Citadel Investment Group, LLC's Motion to Quash the Subpoena (at pages 5-7), Plaintiffs have already been chastised by Magistrate Judge Mason and Judge Guzman in the Northern District of Illinois for serving an "unreasonable and oppressive" non-party subpoena that was a "classic fishing expedition[s]" unrelated to their claims against the PIMCO defendants. The Subpoena appears to be another attempt by Plaintiffs to embark on a fishing expedition, this time seeking to reel in highly confidential commercial information relating to Ronin and other non-party market participants with whom Plaintiffs compete. To the extent that the Subpoena seeks documents and information relating to Ronin, it should be quashed.

WHEREFORE, non-party Ronin Capital, LLC respectfully requests the Court to quash the Subpoena pursuant to Fed. R. Civ. P. 45(c) to the extent that it seeks documents and information relating to Ronin.

DATED: November 16, 2006

Respectfully submitted,

*[signature]*

One of the Attorneys for Non-Party
Ronin Capital, LLC

David S. Krakoff (D.C. Bar No. 229641)
MAYER, BROWN, ROWE & MAW, LLP
1909 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000

Marshall E. Hanbury
Lisa A. Dunsky
MAYER, BROWN, ROWE & MAW, LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

## CERTIFICATE OF SERVICE

I, David S. Krakoff, herby certify that on November 16, 2006, I caused a copy of Ronin Capital, LLC's Motion to Quash to be served via courier on:

Marvin A. Miller
Jennifer W. Sprengel
Anthony F. Fata
Miller Faucher and Cafferty LLP
30 North LaSalle Street
Chicago, IL 60602

Christopher Lovell
Gary S. Jacobson
Merrick S. Rayle
Craig Essenmacher
Lovell, Steward, Halebian LLP
500 Fifth Avenue
New York, New York 10110

Geoffrey M. Horn
Vince Briganti
Lowey Dannenberg Bemporad
  & Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, New York 10601

Louis F. Burke
Louis F. Burke, P.C.
460 Park Avenue
New York, New York 10022

William J. Nissen
Eric J. Grush
Sidley Austin LLP
One Dearborn Street
Chicago, IL 60603

Michael T. Hannafan
Michael T. Hannafan & Associates, Ltd.
One East Wacker Drive
Suite 1208
Chicago, IL 60601

David Kotler
Dechert LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3, Suite 210
Lawrenceville, NJ 08648

William M. Sullivan, Jr.
Kevin M. King
Winston & Strawn LLP
1700 K. Street, N.W.
Washington, DC 20006

Secretary of the Commission
U.S. Commodity Futures Trading
Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

_____
David S. Krakoff

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case – SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____ COLUMBIA

| | |
|---|---|
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, and RICHARD HERSHEY | SUBPOENA IN A CIVIL CASE |
| v. | Case Number: 05 C 4681 Northern District of Illinois |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, and JOHN DOES 1-100 | |

TO: Commodity Futures Trading Commission
    Secretary of the Commission
    Three Lafayette Centre, 1155 21st Street, NW, Washington DC 20581

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE EXHIBIT A ATTACHED:

| PLACE | DATE AND TIME |
|---|---|
| Anthony F. Fata (312.782-4880) c/o Esquire Deposition Services, 1020 19th Street NW, #620A Washington, DC 20036 | September 12, 2006 10:00 A.M. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ Anthony F. Fata — Attorney for Plaintiff | September 5, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
ANTHONY FATA, MILLER FAUCHER & CAFFERTY LLP
30 NORTH La SALLE STREET, CHICAGO, IL 60602
(312) 782-4880

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
　(i) fails to allow reasonable time for compliance;
　(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
　(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
　(iv) subjects a person to undue burden.
(B) If a subpoena
　(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

　(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
　(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT A
Commodity Futures Trading Commission

I. **DEFINITIONS**

1. "CBOT" means the Chicago Board of Trade.

2. "U.S. Treasury" means the United States Department of the Treasury.

3. "United States Ten Year Treasury Note" means a United States Government-debt security maturing after August 2011 and prior to November 2015.

4. "February 2012 Note" means a United States Ten Year Treasury Note maturing in February 2012.

5. "August 2012 Note" means United States Ten Year Treasury Note maturing in August 2012.

6. "March 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in March 2005.

7. "June 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in June 2005.

8. "September 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in September 2005.

9. "December 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in December 2005.

10. "2005 Futures Contracts" means the March 2005 Futures Contract, June 2005 Futures Contracts, September 2005 Futures Contract and/or December 2005 Futures Contract.

11. "PIMCO" means Pacific Investment Management Company LLC, the institutional money manager specializing in fixed income management which is incorporated in the state of Delaware, and who is headquartered in Newport Beach, California. PIMCO also means any

entity in which PIMCO, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which PIMCO manages.

12. "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered open-ended management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which PIMCO Funds manages.

13. "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which Citadel manages.

14. "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda, notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

15. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16. "Concerning" means relating to, referring to, describing, evidencing or constituting.

17. "Person" means any natural person or any business, legal or governmental entity or association.

18. "You" or "your" means the recipient of this subpoena *duces tecum*.

19. "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

II. **RELEVANT PERIOD**

The relevant period, unless otherwise indicated, is from January 1, 2005 to September 30, 2005, and shall include all documents and information that relate, in whole or in part, to the relevant period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior, or subsequent to the relevant period.

III. **INSTRUCTIONS**

1. These discovery requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto.

2. Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3. If any portion of any document is responsive to any request, then the entire document must be produced. If any requested document cannot be produced in full, please produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document.

4. Documents shall be produced in the medium in which they are kept in the ordinary course of business, e.g., all documents and data that are maintained in electronic form shall be produced in their native format, including all available back-up or disaster recovery materials, but shall not be converted to any other format such as a tiff image or PDF file. All documents produced in electronic format must include all attendant meta-data. All electronic mail shall be provided in its native format (e.g., .pst, .nsf, .xls, .doc, etc.).

5. Documents shall be produced in the order in which they appear in your files, and documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

6. If any responsive document was, but is no longer, in the possession or subject to the control of the responding party, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. For each instance, please state the date or approximate date of such disposition and explain the circumstances surrounding such disposition.

7. If any responsive document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, confidentiality or trade secret, please set forth separately with respect to each such document: (a) the nature of the privilege or other rule relied upon in withholding production of the document; (b) the type of document (e.g., letter, memorandum, etc.); (c) the general subject matter of the document; (d) the date of the document; and (e) such other information as is sufficient to identify the document for a *subpoena duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

8. If a portion of any responsive document is protected from disclosure by privilege, work product or any other reason, such document must be produced with redaction of the portion claimed to be protected.

9. Provide each document in English, accompanied by an English translation, and provide a glossary of all terms of art and abbreviations used.

IV. **DOCUMENTS TO BE PRODUCED**

4

1. All documents constituting, referring, relating to, evidencing, or sufficient to show large trader report forms concerning or relating to United States Ten Year Treasury Note futures contracts for the period during the relevant period.

2. All documents constituting, referring, relating to, evidencing, or sufficient to show the daily position of PIMCO and/or PIMCO Funds with any CBOT clearing members or otherwise in United States Ten Year Treasury Note futures contracts during the relevant period.

3. Documents sufficient to show (a) the names and addresses of CBOT clearing members during the relevant period, and (b) the names and addresses of customers who traded June 2005 Futures Contracts between May 13 and June 30, 2005 (including by making or taking delivery).

4. All documents constituting, referring, relating to, or evidencing communications with Citadel, PIMCO, PIMCO Funds, or any PIMCO related entity or any employee or agent of the foregoing relating to 2005 Futures Contracts or the cheapest to deliver notes on 2005 Futures Contracts.

5. All documents reflecting, calculating or relating to the deliverable or available supply or "float" of cheapest to deliver, or other notes available to be delivered on 2005 Futures Contracts, or to the amount of cheapest to deliver or other deliverable notes held by PIMCO, PIMCO Funds, or other market participants.

6. All documents constituting, referring, relating to or evidencing communications between the Commodity Futures Trading Commission and others concerning the June 2005 Futures Contract and/or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, those relating to a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary

prices, price movements, price relationships, liquidation patterns, trading activity and/or deliveries for such contracts and notes.

7. All documents constituting, referring, relating to or evidencing communications between the CBOT and others concerning the June 2005 Futures Contract or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary prices, price movement, or price relationships or liquidation patterns, trading activity and/or deliveries of such contracts and notes.

8. All documents concerning PIMCO's and/or PIMCO Funds' market-on-close transactions on the last day of trading for the June 2005 Futures Contracts, or June 21, 2005, during the relevant period.

9. All documents concerning and/or sufficient to identify time and sales of futures trading for June 2005 Futures Contracts during the relevant period, including, but not limited to, a daily transaction log in chronological order.

10. All documents concerning and/or sufficient to identify a record of deliveries for June 2005 Futures Contracts during the relevant period.

11. All documents and/or communications concerning PIMCO's and/or PIMCO Funds' repurchase transactions and/or reverse repurchase transactions during the relevant period.

12. All documents concerning and/or sufficient to identify short trading of June 2005 Futures Contract during the relevant period.

13. All documents concerning a "squeeze," "corner", "manipulation", and/or "congestion" of June 2005 futures contracts or the February 2012 Notes during the relevant period.

14. All documents concerning market-on-close buy orders placed by PIMCO and/or PIMCO Funds of the June 2005 Futures Contracts and/or the February 2012 Notes during the relevant period.

15. All documents concerning disciplinary action take in connection with orders on the last day of trading of the June 2005 Futures Contract, or June 21, 2005 during the relevant period, including, but not limited to, records of disciplinary action against:

    a. Floor Brokers;

    b. Futures Commission Merchants;

    c. Commodity Exchange Members;

    d. Clearing Members; or

    e. anyone other individual and/or entity.

16. All documents, data and/or information concerning "general collateral" overnight repurchase rates in connection with U.S. Treasury securities during the relevant period.

17. All documents, data and/or information concerning "general collateral" term repurchase rates, including, but not limited to, documents sufficient to identify the term of the transaction, in connection with U.S. Treasury securities during the relevant period.

18. All documents, data and/or information concerning "special" overnight repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the transaction, the maturity date and the CUSIP number, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

19. All documents, data and/or information concerning "special" term repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the

transaction, the maturity date and the CUSIP number, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

20. Any documents, data, information, correspondence, and/or records concerning "failed" deliveries on repurchase transactions collateralized by U.S. Treasury securities, including for each "failed" delivery, the maturity and CUSIP of the security, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes during relevant period.

21. All documents, data, information, correspondence and/or records concerning the holdings or positions in U.S. Treasury securities deliverable against 2005 Futures Contracts held by market participants during relevant period.

22. All documents, data, information, correspondence and/or records concerning the holdings or positions in 2005 Futures Contracts held by market participants during the relevant period.

23. All documents, data, information, correspondence and/or records concerning the prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

24. All documents, data, information, correspondence, and/or records sufficient to identify analysis of the relative prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

25. All documents, data, information, correspondence, and/or records sufficient to identify analysis of the valuation of 2005 Futures Contracts relative to (a) the value of other futures contracts, (b) the prices of cash Treasury securities, and (c) other fixed income instruments (e.g., swap yields) during relevant period.

26. All documents, information, correspondence and/or records concerning the intentions (make/take delivery vs. liquidate futures positions) of participants in the 2005 Futures Contracts during the relevant period.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA TO THE COMMODITY FUTURES TRADING COMMISSION ) ) ) ) ) | Misc. Case No. 1:06MS00489<br><br>Honorable Judge Colleen Kollar-Kotelly |
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, AND RICHARD HERSHEY, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, AND JOHN DOES 1-100, ) ) ) ) ) | |
| Defendants. ) ) | |

## ORDER

UPON CONSIDERATION of Ronin Capital, LLC's Motion to Quash in the above-captioned matter, any opposition thereto, the record herein and for good cause shown, it is hereby

ORDERED that the subpoena served on the Commodity Futures Trading Commission by Plaintiffs in *Kohen, et al. v. Pacific Investment Management Co., LLC, et al.*, Case No. 05 C 4641 (N.D. Ill.), is quashed as to documents and information relating to Ronin Capital, LLC.

ENTERED this _____ day of November, 2006.

_____
UNITED STATES DISTRICT JUDGE