## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA TO THE COMMODITY FUTURES TRADING COMMISSION | ) ) ) ) |
| | ) ) |
| JOSEF A. KOHEN, BREAKWATER TRADING LLC, AND RICHARD HERSHEY | ) ) ) ) ) |
| v. | ) ) No. 06-MC-00489 |
| | ) Judge Colleen Kollar-Kotelly |
| | ) |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, AND JOHN DOES 1-100 | ) No. 05 C 4681 (N.D. Ill.) ) Judge Ronald A. Guzman ) Magistrate Michael T. Mason ) ) |

## CITADEL INVESTMENT GROUP, L.L.C.'S REPLY TO PLAINTIFFS' OPPOSITION TO CITADEL INVESTMENT GROUP, L.L.C.'S MOTION TO QUASH

Citadel Investment Group, L.L.C. ("Citadel") respectfully submits this Reply to Plaintiffs' Opposition to Citadel Investment Group, L.L.C.'s Motion to Quash (the "Opposition") the September 5, 2006 subpoena ("the Subpoena") served by Plaintiffs upon the Commodity Futures Trading Commission ("CFTC").

Plaintiffs' Opposition fails to explain why, following Citadel's subpoena production last spring, Plaintiffs continue to seek Citadel's confidential and proprietary information from the CFTC and other regulatory and self-regulatory authorities. Pursuant to a February 10, 2006 subpoena Plaintiffs issued to Citadel, Citadel has already produced information relating to the June 2005 Ten-year Treasury Note futures contracts ("the June 2005 Contract") on the Chicago Board of Trade ("CBOT"), and the cheapest-to-deliver Treasury Note underlying the June 2005

contract (the "February 2012 Note").   In response to Citadel's Motion to Quash, however,

Plaintiffs do not reference Citadel's direct production and only offer ambiguous and

unpersuasive arguments to support their Subpoena demands.   Such arguments fail to address why

additional confidential commercial information regarding Citadel, a non-party, is necessary for

Plaintiffs' case against the PIMCO defendants.   Moreover, such arguments contradict Plaintiffs'

admissions in other venues, strongly suggesting that large portions of the Subpoena demands are

not necessary to their case.

## ARGUMENT

I.    **Citadel Has Standing to Move This Court to Quash Plaintiffs' Subpoena to the CFTC And To Object On the Basis of Relevance To The Underlying Litigation**

Plaintiffs question Citadel's standing to move this Court to quash the Subpoena on the

basis of relevance.   Citadel clearly has standing to move this Court to quash the Subpoena

pursuant to Rule 45 of the Federal Rules of Civil Procedure, which provides in part:

> If a subpoena requires disclosure of a *trade secret or other confidential research, development, or commercial information* . . . . the court may, to protect a person subject to or *affected by* the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met with undue hardship . . .  the court may order appearance or production only upon specified conditions.

Fed. R. Civ. Pro. 45(c)(3)(B)(i) (emphasis added).   Although Citadel is not a party to the

underlying litigation and is not a recipient of the Subpoena, it has standing to move to quash the

Subpoena pursuant to Rule 45 because the Subpoena seeks, among other things, Citadel's

confidential, commercial information held by the CFTC.

Furthermore, Citadel, as a non-party, has standing to object to the Subpoena's request for

Citadel's confidential and proprietary information on the basis of relevance.   *See, e.g., Builders*

*Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 664453, at *7-8 (N.D. Ill.

June 12 2001); *U.S. v. Serta Assocs., Inc.*, 29 F.R.D. 136, 138 (N.D. Ill. 1961) (court quashed subpoena *duces tecum* directed to non-party because court was "not convinced of the relevancy of the documents sought").[1]  The fact that Plaintiffs are seeking information relating to Citadel from the CFTC and not directly from Citadel should make no difference to the Court's analysis. Indeed, the disclosure of proprietary and confidential commercial information irrelevant to the underlying litigation would harm Citadel regardless of whether the information is sought directly from Citadel or indirectly from the CFTC.

## II.    Plaintiffs Fail to Demonstrate That CFTC Documents and Information Relating to Citadel Are Relevant to Plaintiffs' Claims Against the PIMCO Defendants

Plaintiffs fail to provide a legitimate rationale for this Court to order the disclosure of sensitive and proprietary information regarding non-party market participants.  Plaintiffs simply should not be allowed to rummage indiscriminately through confidential and proprietary information compiled by the CFTC in connection with the fulfillment of its regulatory obligations.  Rather, as prerequisites to CFTC production of any information regarding Citadel, Plaintiffs must be required to establish the relevance of the specific information sought and the need to obtain it from a government entity.  Fed. R. Civ. P. 45(c)(3)(B); *see also Fort James Corp. v. Sweetheart Cup Co., Inc.*, 1998 WL 709813, at * 2-3 (S.D.N.Y. Oct. 8, 1998).

### A.    Plaintiffs Do Not Need Citadel's Confidential and Proprietary Information to Identify Potential Class Members

Plaintiffs claim that the documents and information sought from the CFTC will "greatly assist" in the identification of class members and facilitate the process of issuing class notices.

---

[1]    Plaintiffs' Opposition fails to cite to any authority for the assertion that Citadel does not having standing to object to the relevance of the Subpoena.  Rather, Plaintiffs merely condemn Citadel's reliance on *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 29 (N.D. Cal. 1995) by stating, without any support from the language of the case, that a non-party has standing to assert the irrelevance of subpoenaed information *only* where the non-party actually received the subpoena.  Unfortunately for Plaintiffs, the court in *Compaq* makes no such assertion.

However, Plaintiffs did not ask the CFTC to produce merely the identities and contact information of market participants, which could have easily been disclosed without revealing confidential and proprietary information. Given the notoriety of the PIMCO litigation, market participants are well aware of Plaintiffs' pending lawsuit and do not require additional notification. Indeed, the CFTC has distributed over 100 notices about the litigation and Plaintiffs' Subpoena pursuant to Section 8(f) of the Commodity Exchange Act. There simply is no reason why Plaintiffs need access to confidential and proprietary information collected by the CFTC to search for the names of potential class members. This argument by Plaintiffs is disingenuous.

### B. Citadel Has Already Produced to the Plaintiffs Data Sufficient for Their Proposed Market Analysis

Plaintiffs claim that the information they seek from the CFTC will aid their experts in developing and preparing damage models, and prove the existence of market manipulation. In addition, Plaintiffs offer the conclusory assertion that prices and pricing data from the CFTC are "very relevant to plaintiffs' claims." Plaintiffs' assertions gloss over the real questions presented by the Subpoena: (1) what information do Plaintiffs need for their damage modeling?; (2) what additional information do Plaintiffs need regarding Citadel's positions?; and (3) why must Plaintiffs obtain the information from the CFTC?

Plaintiffs' requests are over-broad and seek not only end-of-day positions, but also intra-day price and volume data. The end-of-day position data of market participants is sufficient for Plaintiffs' modeling purposes. Plaintiffs have alleged a manipulation scheme existing over several months and for purposes of establishing such a long-running scheme, end-of-day position data provides more than sufficient detail.

In the case of Citadel, end-of-day position information already has been produced to Plaintiffs in response to a February 10, 2006 subpoena served directly on Citadel. There is simply no need for Plaintiffs to seek additional confidential and proprietary information regarding Citadel from the CFTC.

Citadel is not aware of any reason why (and notably the Plaintiffs do not offer an explanation) intra-day price and volume trading data is necessary for purposes of Plaintiffs' economic modeling. Such information, coupled with opening and closing positions set forth in large trader forms, could be analyzed and reverse-engineered to discern proprietary trading practices and trading strategies of market participants, disclosure of which would result in significant economic harm.

Moreover, Plaintiffs still have not provided any explanation for why they need to obtain the requested information from the CFTC. Indeed, any potentially relevant documents and information Plaintiffs seek could be obtained directly from market participants. In fact, Plaintiffs sought and obtained position data sufficient for their economic models directly from Citadel. There is no reason why Plaintiffs should get any additional information from the CFTC.

### C.  Citadel's Communications With the CFTC Do Not Contain or Reference the Defendants' Communications With Regulators

Plaintiffs assert that the documents they seek to acquire "will reflect communications, representations and statements to regulators by defendants and their representatives." Plaintiffs' justification, however, is directly contradicted by the indiscriminate nature of the Subpoena.

Plaintiffs' Subpoena is not tailored to obtain documents and information relating only to the PIMCO defendants, but rather *it seeks access to all of the CFTC's communications* regarding the subject notes and futures contracts, including communications with non-party market participants like Citadel. For example, request number 4 of the Subpoena demands production of

the CFTC's communications with non-defendant Citadel.[2]  Likewise, request number 6 of the Subpoena calls for production of the CFTC's communications with *all other parties* concerning the June 2005 Contract or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Contract.[3]

Plaintiffs' attempt to justify their expansive Subpoena requests as intending to elicit production of communications with the PIMCO defendants should be construed by this Court as an admission that documents and information regarding Citadel are simply not relevant to the Plaintiffs' case.

> **D.    Contrary to the Assertions Made in Plaintiffs' Opposition, In Other Venues Plaintiffs Have Conceded That Much of the Information Sought in the Subpoenas Served on the CFTC and Other Regulators Is Not Relevant to Plaintiffs' Claims Against the PIMCO Defendants**

In pleadings in the Northern District of Illinois, Plaintiffs have largely conceded that much of the information sought in their subpoenas (including documents and information relating to Citadel) is not necessary to their claims against the PIMCO defendants.[4] Furthermore, we understand that Plaintiffs are in negotiations with the CFTC and may make similar concessions with respect to the Subpoena issued to the CFTC.  Plaintiffs' actions in the

---

[2]    Request number 4 of the Subpoena calls for production of:

4.    All documents constituting, referring, relating to, or evidencing communications with *Citadel . . .* or any employees or agents of the foregoing relating to June 2005 Contracts, March 2005 United States Ten Year Treasury Note futures contracts or the cheapest to deliver notes on either the June Contract or March Contract.  (emphasis added)

[3]    Request number 6 of the Subpoena calls for production of:

6.    All documents constituting, referring, relating to or evidence communications between you [i.e., the CFTC] and others concerning the June 2005 Contract or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 contract, including, but not limited to, a 'short squeeze,' 'corner' and/or unusual, abnormal, or out of the ordinary dislocation in the price of such contracts and notes.  (emphasis added)

[4]    Such concessions may be due, at least in part, to an acknowledgment by Plaintiffs of the District Court's admonition against "unreasonable and oppressive" subpoenas to non-party witnesses.  *See* Order of U.S. District Court Judge Ronald A. Guzman, Hershey et al. v. Pacific Inv. Mgmt. Co., No. 05-4681 (N.D. Ill. October 5, 2006) [Docket No. 154].

Northern District of Illinois and their discussions with the CFTC directly contradict many of the justifications offered in the Opposition.

In March 2006, Plaintiffs served a subpoena ("March CBOT Subpoena") on the CBOT that was virtually identical in scope to the first six requests of the Subpoena subsequently served on the CFTC. In a Reply to the CBOT's Opposition to Plaintiffs' Motion to Compel, Plaintiffs have stated that they are no longer seeking production of the documents called for by request numbers 2, 3, 4 and 5 of the March CBOT Subpoena, and that request number 6 would be narrowed to pertain to only communications about the PIMCO defendants. By dropping their demands, Plaintiffs essentially concede that the abandoned requests are not necessary to their case. (Copies of the March CBOT Subpoena and Plaintiffs' Reply to the Chicago Board of Trade's Response to Plaintiffs' Motion to Compel are attached as Exhibits A and B.)

Similarly, with respect to the Subpoena issued to the CFTC, we understand that Plaintiffs are engaged in negotiations with the CFTC and have offered to significantly narrow their original discovery demands.

In light of these concessions, Plaintiffs' assertions of relevance and need should be closely scrutinized. It is inconsistent for Plaintiffs to concede that information regarding Citadel is unnecessary to their case against the PIMCO defendants for purposes of proceedings before the Northern District of Illinois, but to oppose Citadel's Motion to Quash and argue before this Court that the information is vitally important to their case.

III.    **A Protective Order Will Not Adequately Protect the Confidentiality of Citadel's Proprietary Commercial Information**

Plaintiffs seek to ease concerns regarding the CFTC's production of highly sensitive commercial information by pointing to the existence of a protective order in the underlying

litigation.  As a non-party to the underlying litigation, however, Citadel obtains little comfort from the presence of the order.

The effectiveness of protective orders rests not only with the parties subject to the order, but active policing to identify and immediately mitigate inadvertent or accidental disclosures of confidential and proprietary information.  As a non-party to the underlying litigation, Citadel (like most other market participants) will not be present at depositions and court proceedings and will not be positioned to scrutinize pleadings.  In the event proprietary information is leaked, it will be difficult, if not impossible, for Citadel to track and contain the information.  Despite the best intentions, inadvertent disclosures do occur.  Whether by accident or intent, the impact on Citadel and other market participants could be severe.

In light of these risks, Citadel respectfully urges the Court to provide Plaintiffs with only the information that the Court believes is necessary to pursue their case, and to not jeopardize Citadel and other similarly situated market participants by providing Plaintiffs with a general license to sift through the CFTC's files.

<u>**CONCLUSION**</u>

Plaintiffs' assertions of the relevancy and need for Citadel's proprietary and confidential information are unconvincing.  Citadel respectfully requests that the Court grant Citadel's Motion to Quash Plaintiffs' Subpoena as to documents and information relating to Citadel.

November 28, 2006

Respectfully submitted,

/s/ Kevin M. King
William M. Sullivan, Jr. (Bar No. 427269)
Kevin M. King (Bar No. 456841)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 282-5000
Fax:  (202) 282-5100

*Counsel for Citadel Investment Group, L.L.C.*

## CERTIFICATE OF SERVICE

I, Kevin M. King, one of the attorneys for Citadel Investment Group, L.L.C., hereby certify that on November 28, 2006 I served a copy of Citadel Investment Group, L.L.C.'s Reply to Plaintiffs' Opposition to Citadel Investment Group, L.L.C.'s Motion to Quash by ECF or Federal Express on the following persons:

Glynn L. Mays, Esq.
Gloria P. Clement, Esq.
**COMMODITY FUTURES TRADING COMMISSION**
Office of the General Counsel
1155 21st Street, N.W.
Three Lafayette Centre
Washington, D.C.  20581
Telephone:  (202) 418-5122
Facsimile:  (202) 418-5424
E-mail:  gmays@cftc.gov; gclement@cftc.gov

William J. Nissen
Eric J. Grush
Jennifer Tan
**SIDLEY AUSTIN**
One Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
E-mail:  wnissen@sidley.com;
egrush@sidley.com; jtan@sidley.com

*Counsel for PIMCO*

Marvin A. Miller
Anthony F. Fata
**MILLER FAUCHER AND CAFFERTY LLP**
30 North La Salle Street, Suite 3200
Chicago, Illinois  60602
Telephone:  (312) 782-4880
Facsimile:  (312) 782-4485
E-mail:  mmiller@millerfaucher.com;
afata@millerfaucher.com

*Designated Local Counsel for Plaintiffs*

David Kotler
**DECHERT LLP**
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, New Jersey  08543
Telephone:  (609) 620-3226
Facsimile:  (609) 620-3259
E-mail:  david.kotler@dechert.com

*Counsel for PIMCO Funds*

Michael T. Hannafan
**MICHAEL T. HANNAFAN & ASSOCIATES, LTD.**
One East Wacker Drive, Suite 1208
Chicago, Illinois  60601
Telephone:  (312) 527-0055
Facsimile:  (312) 527-0220
E-mail:  nap@hannafanlaw.com;
bth@hannanlaw.com

*Counsel for PIMCO Funds*

Christopher Lovell
Gary S. Jacobson
Merrick S. Rayle
Craig Essenmacher
**LOVELL, STEWARD, HALEBIAN LLP**
500 Fifth Avenue
New York, New York  10110
Telephone:  (212) 608-1900
Facsimile:  (212) 718-4677
E-mail:  msrayle@sbcglobal.net

*Counsel for Plaintiffs*

Louis F. Burke
**LOUIS F. BURKE, P.C.**
460 Park Avenue
New York, New York  10022
Telephone:  (212) 682-1700
Facsimile:  (212) 808-4280
E-mail:  lburke@lfblaw.com

*Counsel for other Plaintiffs*

Lee Ann Russo
Karey V. Skiermont
**JONES DAY**
77 West Wacker
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
E-mail:  larusso@jonesday.com;
kskiermont@jonesday.com

*Counsel for Lehman Brothers, Inc.*

Geoffrey Horn
Vince Briganit
**LOWEY DANNENBERG BEMPORAD &
SELINGER, P.C.**
One North Lexington Avenue, 11th Floor
White Plains, New York  10601
Telephone:  (914) 997-0500
Facsimile:  (914) 997-0035
E-mail:  ghorn@ldbs.com;
vbriganit@ldbs.com

*Counsel for other Plaintiffs*

Marshall E. Hanbury
Lisa A. Dunsky
**MAYER, BROWN, ROWE & MAW, LLP**
71 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 706-8626
E-mail:  mhanbury@mayerbrownrowe.com;
ldunsky@mayerbrownrowe.com

*Counsel for Ronin Capital, LLC*

/s/  Kevin M. King
Kevin M. King

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

## NORTHERN DISTRICT OF ILLINOIS

Josef A. Kohen, Breakwater Trading LLC
and Richard Hershey, Plaintiffs
          **V.**

Pacific Investment Management Company LLC,
PIMCO Funds, et al., Defendants.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1] 05C 4681

TO:   Chicago Board of Trade
      141 West Jackson Boulevard, Chicago, IL 60604.

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

**X**   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Exhibit A

| PLACE  Miller, Faucher, and Cafferty LLP, 30 North LaSalle Street, Suite 3200, Chicago, IL 60602    (312) 782-4880 | DATE AND TIME<br>April 3, 2006 at 10:00 a.m. |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

*Ryan E. Long* *By: AFF*

Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)
Ryan E. Long, Lovell Stewart Halebian LLP - Counsel for Plaintiffs

Dated March 3, 2006

Issuing Officer's Name, Address, and Phone Number
Ryan E. Long, 500 Fifth Avenue, Suite 5800, New York, New York 10110

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE *Chicago Board of Trade* |
|---|---|---|
| SERVED | 3/3/06 | *141 W. Jackson Chicago, IL. 60604* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| X *John Burda* | *Asst General C31. (Personal)* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Jorge Ramirez* | *Law Clerk* |

---

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   3/3/06
                    DATE

*Jorge Ramirez*
SIGNATURE OF SERVER

*30 N. La Salle Chicago, IL. 60602*
ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
   (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
   (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance;
      (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
      (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iv) subjects a person to undue burden.
   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
   (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Exhibit "A"

## INSTRUCTIONS

1.      Unless a specific request indicates otherwise, this request calls for production of documents dated, prepared, received or used by you during the period from March 1, 2005 through July 31, 2005. However, if a document prepared before March 1, 2005 is necessary for a correct and/or complete understanding of any document covered by the request, such earlier document shall be produced.

2.      In responding to this document request, you are required to furnish all documents that are available or accessible to you, including documents in your possession, custody or control.

3.      For each document withheld on a claim of work product, attorney-client, investigative, deliberative document or other privilege, provide the following information:

        a.      the date the document bears or the date upon which it was prepared;

        b.      the author(s) of the document;

        c.      the addressee(s) or recipient(s) of the document;

        d.      the title and subject matter of the document; and

        e.      the nature of the privilege claim and the factual and legal basis thereof.

4.      If any document requested was, but is no longer, in your possession, custody or control, or is no longer in existence, please provide the following information:

        a.      whether it is missing or lost;

        b.      whether it has been destroyed;

        c.      whether it has been transferred, voluntarily or involuntarily, to others; or

        d.      whether it has been otherwise disposed of.

For each such document, explain the circumstances surrounding such disposition, give the date thereof and identify those persons to whom the document was transferred or who has knowledge thereof.

5.      Provide each document in English, or accompanied by an English translation, and provide a

1

glossary of all terms of art and abbreviations used in any report of computer print-out.

## DEFINITIONS

1.    "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of

Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda,

notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations.

A draft or non-identical copy is a separate document within the meaning of this term.

2.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or

otherwise).

3.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

4.    "United States Ten Year Treasury Note" means a United States Government-debt security

maturing after August 2011 and prior to November 2015.

5.    "Person" means any natural person or any business, legal or governmental entity or association.

6.    "You" or "your" means the recipient of this subpoena *duces tecum*.

7.    "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the

scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.    "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which

Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund of other investment

entity which Citadel manages.

9.    "PIMCO LLC" means Pacific Investment Management Company LLC, the institutional money

manager specializing in fixed income management which is incorporated in the state of Delaware, and

who is headquartered in Newport Beach, California.  PIMCO LLC also means any entity in which PIMCO

LLC, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment

entity which PIMCO LLC manages.

10.    "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered opened end

2

management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its

parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which

PIMCO Funds manages.

## DOCUMENTS TO BE PRODUCED

1.    All documents constituting, referring, relating to, evidencing, or sufficient to show large trader

report forms concerning or relating to United States Ten Year Treasury Note futures contracts for the

period between March 1 and July 31, 2005.

2.    All documents constituting, referring, relating to, evidencing, or sufficient to show the daily

position of PIMCO LLC and/or PIMCO Funds with any CBOT clearing members or otherwise in United

States Ten Year Treasury Note futures contracts between March 1 and July 31, 2005.

3.    Documents sufficient to show (a) the names and addresses of CBOT clearing members between

May 1 and July 1, 2005, and (b) the names and addresses of customers who traded June 2005 United States

Ten Year Treasury Note futures contracts ("June 2005 Contracts") between May 13 and June 30, 2005

(including by making or taking delivery).

4.    All documents constituting, referring, relating to, or evidencing communications with Citadel,

PIMCO LLC, PIMCO Funds, or any PIMCO related entity or any employee or agent of the foregoing

relating to June 2005 Contracts, March 2005 United States Ten Year Treasury Note futures contracts

("March 2005 Contracts") or the cheapest to deliver notes on either the June Contract or March Contract.

5.    All documents reflecting, calculating or relating to the deliverable or available supply or "float"

of cheapest to deliver, or other notes available to be delivered. on March 2005 or June 2005 Contracts, or

to the amount of cheapest to deliver or other deliverable notes held by PIMCO LLC, PIMCO Funds, or

others.

6.    All documents constituting, referring, relating to or evidencing communications between you

and others concerning the June 2005 Contract or the cheapest to deliver or other U.S. Treasury notes

deliverable on the June 2005 contract, including, but not limited to, a "short squeeze," "corner" and/or unusual, abnormal, or out of the ordinary dislocation in the price of such contracts and notes.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

JOSEF A. KOHEN, BREAKWATER )
TRADING LLC, and RICHARD HERSHEY, )
                                     )
                    Plaintiffs, )
                                       )
          v. )         No. 05 C 4681
                                         )         Judge Ronald A. Guzman
                                         )         Magistrate Michael T. Mason
PACIFIC INVESTMENT MANAGEMENT )
COMPANY LLC and PIMCO FUNDS, )
                                       )
                  Defendants. )
                                       )

---

## PLAINTIFFS' REPLY TO THE CHICAGO BOARD OF TRADE'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL RULE 45 DISCOVERY

Plaintiffs respectfully submit this reply in further support of their motion to compel the Chicago Board of Trade (the "CBOT") to produce the documents demanded by Request # 1 and a portion of Request # 6 contained in plaintiffs' subpoena to the CBOT. After important further discovery from defendants and consultation with an economic consultant, plaintiffs are no longer seeking production of the documents called for by Requests ## 2-5. *See* Motion pp. 3-4 quoting subpoena.

**Request # 1 in Plaintiffs' Subpoena to the CBOT: The CBOT Fails To Demonstrate That The Large Trader Report Forms Are Privileged And, To The Extent They Were Privileged, Plaintiffs Have A Compelling Need For Them.** The CBOT objects to the production of large trader report forms sought by Request #1 on the grounds of burden, overbreadth, and supposed privilege. CBOT Opposition at pp. 2, 4-8.

If a U.S. or other citizen is going to enjoy the privilege of taking a large position in a commodity futures contract traded on a U.S. commodity exchange, then that citizen is legally required to file large trader report forms. *See* 17 U.S.C. 6(a); 17 C.F.R. Section 17.00(a). There is nothing voluntary or discretionary about this; if a private citizen acquires a position in a commodity futures contract above a specified level, then the large report forms must be filed. *Id.*

In the instance of June 2005 ten year treasury note futures contracts ("June Contracts") traded on the CBOT, these large trader report forms are required to be filed with the CBOT. As the CBOT appears to concede, such forms are highly relevant to numerous issues within plaintiffs' claims that June contract prices were unlawfully manipulated between May 9 and June 30, 2005 (the "Class Period").

First, such forms will greatly assist in the identification of class members and the required sending of the class notice to class members. Indeed, more than 80% of the June contract positions held by class members were likely held by large traders. *See e.g.*, http://www.cftc.gov/cftc/cftccotreports.htm at p. 2 (for example, the CFTC commitment of traders report dated May 24, 2005 reflects that more than 80% of ten year futures contracts were held by large traders).

Second, the large trader report forms will greatly assist plaintiffs' experts in the development and preparation of class-wide damage models. This is because the forms reflect the exact amounts and changes in a significant portion of the positions held by these class members during the Class Period. The timing of changes in specific positions affects the amount of damages to each trader and the aggregate class damages.

Third, the large trader report forms will help plaintiffs' experts determine the constituency and concentration of the largest traders within the market, and will reflect the

identities of the large participants in the market were as the Class Period progressed. These factors are relevant to and may be very helpful in proving manipulation.

**The CBOT's Burden Objection.**  The CBOT's burdensomeness objection is that plaintiffs seek large trader report forms for "all expiration months, [not just the June contract] for a five month period [not just the Class Period]".  CBOT Opposition at p. 2.  In response, Plaintiffs **voluntarily** limit their requests to the June contract only, and the time period Request #1 to the period from April 30, 2005 through July 10, 2005, only.  Plaintiffs' experts need these reports for a period beginning ten days before and ending ten days after the Class Period.  (This limitation is without prejudice to plaintiffs' seeking more large trader reports if future developments should circumstances warrant.)

Privilege.  The CBOT has failed to demonstrate that it has any privilege in respect of the large trader report forms.[1]  No case has held large trader report forms to be privileged.

---

[1] The CBOT cites to and relies upon a case involving a subpoena to a government agency under the Commodity Exchange Act.  *Friedman v. Bache Halsey Stuart Shields Inc.*, 738 F.2d 1336 (D.C.Cir. 1984).  Although the CBOT is **not** a government agency and *Friedman* is **not** binding on this Court, applying the factors articulated in *Friedman* to plaintiffs' subpoena demonstrates that the CBOT should produce large trader report forms and CBOT's records of certain oral communications with market participants.  In *Friedman*, the Court held that the CFTC had failed to demonstrate that it was entitled to any privilege even though the CFTC was in fact engaged in a five year long investigation that resulted in a complaint that various parties had manipulated silver futures contracts. *See In re Nelson Bunker Hunt*, CFTC Docket No. 85-12 (1985).  In contrast, the CBOT has conceded that no investigation is ongoing here.

In *Ross v. Bolton*, 106 F.R.D. 22, 24 (S.D.N.Y. 1985), the NASD was ordered to produce documents in its possession reflecting the underlying data and facts.  But the NASD did not have to produce the deposition transcripts that its investigators had created nor its own analyses of the underlying facts and data.  Here, the large trader report forms are clearly underlying data, do not contain any analysis by the CBOT, and do not represent any work product of exchange investigators in conducting depositions, etc.

In *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 176 (2d Cir. 1979), the CFTC was ordered to answer questions at deposition for discovery purposes with

3

Typically, underlying data, facts and real time communications during trading are not privileged, reflect relevant events, and must be produced. *Id.*

The large trader report forms are not prepared by the CBOT. They do not reflect any analysis or self-evaluation or comments by the CBOT. Thus, the only attempt to demonstrate a privilege that the CBOT can muster is as follows: the CBOT uses the large trader report forms as part of its real time surveillance efforts. Surveillance, says the CBOT, is indistinguishable from an investigation or disciplinary proceeding. CBOT Opposition at pp. 3-4. The CBOT also references the relationships that it has supposedly built up with traders in order to obtain information from them. CBOT Opp. pp. 7-8.[2]

However, passively receiving legally required large trader report filings is not surveillance. Even if it were, the CBOT cites to no case equating surveillance with a disciplinary proceeding or an investigation into wrongdoing. CBOT Opposition, *passim.* The cases speak of disciplinary proceedings or investigations, not real time receipt of reports reflecting trades (nor real time conversations with market participants as the futures contract is trading).[3] By

---

their admissibility in the public record reserved for trial. As here, a confidentiality order governing discovery was in effect.

In *Apex Oil Company v. DiMauro*, 110 F.R.D. 490 (S.D.N.Y 1985) the documents sought were the files of the Exchange's internal investigation, not original source data filed pursuant to statute by large traders. The only asserted relevance was to impeach the accuracy of other statements. *Apex Oil*, 110 F.R.D. 490, 497. Therefore, unlike here, a strong showing of investigative privilege was clearly established. Also unlike here, the need for "credibility checking" (rather than the extensive relevancy purposes established here) was not compelling.

[2] The truth is that members of the Exchange are required by rule to cooperate with the Exchange in its investigations. If those members refuse to deal with a customer, such as Pimco or other customers, then those customers can not trade on the CBOT. This compulsion, not good relationships, is what guarantees co-operation from market participants.

[3] For example, the ten factors listed in the *Friedman* case cited by the CBOT, consistently mention investigation and disciplinary proceedings but do not mention statutorily required

4

definition, surveillance involves mere fact gathering whereas the decision to investigate or commence disciplinary proceedings involves more analysis, evaluation and opinions or work product of the government officials.

Moreover, even if passively receiving reports could constitute surveillance and even if surveillance were entitled to some privilege, the following would control. There is nothing voluntary and no discretion is invested in market participants as to whether they file large trader reports with the CBOT. Rather, such reports are mandatory. Thus, the CBOT has failed to show that the production in this case of the requested large trader reports will cause market participants to "change their mind", or will interfere with future large trader filings, or with the CBOT's surveillance activities in any way.

Accordingly, under *Friedman* factors (3)-(7), (*see* 783 F.2d at 1342-1343), the CBOT has no privilege as to the large trader report forms. Even if the CBOT had shown a privilege, plaintiffs cannot reasonably obtain the large trader reports in any other way. Contrary to the CBOT's implication, plaintiffs do not know who the large traders are. Therefore, plaintiffs' only possible alternative would be to subpoena all 87 CBOT clearing members for all of their customers' records. This extraordinarily burdensome process would not necessarily obtain the required information and, in any event, would be very over-inclusive if successful. Also, discovery is scheduled to close in this case on January 15, 2007. The process of issuing subpoenas to all 87 CBOT members for their customer records, and then prosecuting motions to compel before this Court, would likely have taken years. Finally, such time consuming process would yield **not** the large trader report forms but a mass of brokerage statements. Plaintiffs

---

reports or even surveillance. *Friedman* 783 F.2d at 1342-1343 (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973))

would then have to devote literally thousands of hours to analyzing such brokerage statements in order to re-create and re-distill the large trader reports. In sum, even if the large trader reports were privileged, they are not reasonably available to plaintiffs from another source. Therefore, *Friedman* factor (9) (783 F.2d 1343), favors production of the large trader report forms.

Under *Friedman* factor (1), (*see* 783 F.2d at 1342-43), disclosure of the large trader report forms will not thwart government processes or discourage citizens from giving the government information **because** citizens who decide to take large positions are legally required to file these reports. Under *Friedman* factor (2), the only impact upon the large traders of having their identities disclosed will likely be positive. That is, they will receive the class notice and have an opportunity to participate in any settlement or judgment proceeds obtained herein if they are class members. If they are not class members, the impact will likely be non-existent because there is a confidentiality order in place in this litigation. *See Friedman* 783 F.2d at 1344 ("The courts can limit, and in actual practice do limit, the persons having access to information, their freedom to discuss the information to which they are given access, and the uses to which the information may be put. No great outcry has arisen that information thus restricted has been leaked, or put to improper uses, by attorneys who are sworn officers of the court.")

Under *Friedman* factor (8), plaintiffs' suit clearly is "non-frivolous and brought in good faith." *See Friedman* 783 F.2d at 1343. Thus, plaintiffs contend (and will prove): (1) that defendants held more than 80% of the long position open interest in the June contract and in the February 2012 U.S. treasury note which was the cheapest to deliver ("CTD") on the June contract; (2) that, as a result, June contract prices were artificial, extremely rich, and were more out of line, according to standard futures valuation models, than in any previous ten year futures contract; (3) yet defendants continued to take steps to further increase prices of June contracts

6

and February 2012 notes including taking the largest deliveries in the history of CBOT ten year futures contracts; and (4) the CBOT implemented a position limit to prevent any trader from ever doing again what Pimco did in the June contract.

Finally, under *Friedman* factor (10) (*see* 783 F.2d at 1343), the large trader report forms are extremely important in this class action and plaintiffs have a compelling need for them.. See pp. 1-2 supra. *See Frey v. Commodity Futures Trading Commission*, 931 F.2d 1171, 1175 (the role of market participants is of great significance in manipulation analysis).

**Request No. 6: Complaints to the CBOT about short squeezes or manipulation**.  Under the foregoing principles, the CBOT should be ordered to produce notes or memos reflecting oral complaints between May 1 and June 30, 2005 to the CBOT that the June contract was being manipulated or squeezed, as well as any written complaints from any market participant to that effect.

<div style="margin-left:40%">

Respectfully submitted,

BREAKWATER TRADING LLC,
and RICHARD HERSHEY,

By: s/  Marvin A. Miller
Marvin A. Miller
Jennifer W. Sprengel
Anthony F. Fata
**MILLER FAUCHER and CAFFERTY LLP**
30 North La Salle Street, Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Designated Local Counsel for Plaintiffs*

</div>

Dated:  November 16, 2006

7

Christopher Lovell
Gary S. Jacobson
Craig Essenmacher
Christopher M. McGrath
**LOVELL, STEWART HALEBIAN, LLP**
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
*Lead Counsel for Plaintiffs*

Geoffrey M. Horn
Vince Briganti
**LOWEY DANNENBERG BEMPORAD**
**& SELINGER, P.C.**
The Gateway
One North Lexington Avenue
White Plains, New York 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

Louis F. Burke
**LOUIS F. BURKE, P.C.**
460 Park Avenue
New York, New York 10022
Telephone: (212) 682-1700
Facsimile: (212) 808-4280

*Counsel for Plaintiffs*

8

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC MEANS</u>

     I, Anthony F. Fata, one of the attorneys for Plaintiffs, hereby certify that on November 16, 2006, service of the ***Plaintiffs' Rely to the Chicago Board of Trade's Response to Plaintiffs' Motion to Compel Rule 45 Discovery*** was accomplished pursuant to ECF as to Filing Users and served upon any Non-Filing Users by placing a copy of the same in the United States Mail at 30 North LaSalle Street, Chicago, Illinois.

                               <u>/s Anthony F. Fata</u>
                               Anthony F. Fata

9