**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA TO THE COMMODITY FUTURES TRADING COMMISSION** | ) ) ) ) ) ) |

**IN RE SUBPOENA TO THE** )
**COMMODITY FUTURES** )   Misc. Case No.  1:06MS00489
**TRADING COMMISSION** )
                                                      )   Honorable Colleen Kollar-Kotelly
                                                      )
                                                      )
**JOSEF A. KOHEN, BREAKWATER** )
**TRADING LLC, and RICHARD** )
**HERSHEY,** )
                                                      )
         **Plaintiffs** )
                                                      )
              **v.** )
                                                      )
**PACIFIC INVESTMENT MANAGEMENT** )
**COMPANY LLC, PIMCO FUNDS, and** )
**JOHN DOES 1-100** )
                                                      )
         **Defendants.** )
                                                      )

## CHICAGO BOARD OF TRADE'S MOTION TO QUASH

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Board of Trade

of the City of Chicago, Inc. ("CBOT®" or "Exchange"), a non-party, hereby moves this

Court to quash the September 5, 2006 subpoena ("Subpoena") that was issued through

this Court and served on the Commodity Futures Trading Commission ("Commission" or

"CFTC") in connection with *Hershey et al. v. Pacific Investment Management Company

LLC, et al.*, No. 05 C 4681, pending in the U.S. District Court for the Northern District of

Illinois, insofar as it seeks production of certain information submitted to the

Commission by the CBOT and its clearing members.  A copy of the Subpoena is attached

as Exhibit A.   Specifically, the CBOT requests that the Court quash the subpoena to the

extent that it would require disclosure of:

    (a)    large trader reports concerning or relating to United States Ten Year Treasury Note futures contracts filed by CBOT market participants with the Exchange and the Commission (Request No. 1); and

    (b)    A daily transaction log of all transactions in June 2005 Ten Year Treasury Note futures contracts in chronological order, from January 1, 2005 through the June 2005 expiration. (Request No. 9).

As further described below, the Plaintiffs have requested detailed information about every single market participant's business transactions, the vast majority of which are entirely irrelevant to the Plaintiffs' claims. These records constitute the confidential commercial information of both the Exchange and the Exchange's customers and the Plaintiffs have made no showing of any substantial need for such documentation.

I.    <u>Background</u>

The underlying lawsuit is based on allegations by the Plaintiffs that Pacific Investment Management Company LLC and PIMCO Funds (collectively, "PIMCO") manipulated, and aided and abetted the manipulation of, the price of the June 2005 futures contract traded on the CBOT, as well as the price of the Ten Year U.S. Treasury Note ("February 2012 Note") that was cheapest to deliver on the June 2005 futures contract, in violation of the Commodity Exchange Act, as amended ("CEA").[1]

Plaintiffs had previously served two separate subpoenas on the CBOT, issued by the U. S. District Court for the Northern District of Illinois, on March 3, 2006, and August 9, 2006, respectively. The CBOT responded to the subpoenas by producing a number of documents and several computer disks, and asserted various privileges and objections with respect to the other requested information. Copies of the March 3, 2006 subpoena and the CBOT's April 12, 2006 response are attached as Exhibits B and C,

---

[1] *See* First Amended Consolidated Class Action Complaint, *Hershey et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681 (N.D. Ill. May 30, 2006) [Docket No. 80].

respectively.  Copies of the August 9, 2006 subpoena and the CBOT's August 23, 2006 and September 5, 2006 responses are attached as Exhibits D, E, and F, respectively.

On October 12, 2006, Plaintiffs filed a Motion to Compel Rule 45 Discovery from the CBOT in the Northern District of Illinois, with respect to certain categories of documents that had been requested in the March 3, 2006 subpoena.[2]  On October 17, 2006, the CBOT filed its Response to the Plaintiffs' Motion[3] and the Plaintiffs filed their Reply on November 16, 2006.[4]  The U. S. District Court for the Northern District of Illinois has notified the parties that no appearance will be permitted and that it will mail its ruling on the Motion to Compel.  No ruling has yet been issued.

II.    The Commission should not be required to produce a daily
       transaction log

Request No. 9 in the Subpoena seeks production of "[a]ll documents concerning and/or sufficient to identify time and sales of futures trading for June 2005 Futures Contracts during the relevant period, including, but not limited to, a daily transaction log in chronological order."  The Plaintiffs had requested the same information from the CBOT in their August 9, 2006 subpoena.  The CBOT already produced to the Plaintiffs a computer disk containing the Exchange's Time and Sales Data for June 2005 futures

---

[2] Plaintiffs' Motion to Compel Rule 45 Discovery from the Chicago Board of Trade, *Hershey et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681 (N.D. Ill. Oct. 12, 2006) [Docket No. 160].

[3] Chicago Board of Trade's Response to Plaintiffs' Motion to Compel Rule 45 Discovery, *Hershey et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681 (N.D. Ill. Oct. 17, 2006) [Docket No. 167].

[4] Plaintiffs' Reply to the Chicago Board of Trade's Response to Plaintiffs' Motion to Compel Rule 45 Discovery, *Hershey et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681 (N.D. Ill. Nov. 16, 2006) [Docket No. 177].

contracts for the specified time period in response to that subpoena. This data reflects the times during which various prices were active and, for trades executed electronically, the quantities that were executed at such prices.

However, a "daily transaction log" would reflect every single transaction executed on behalf of every single customer of every Exchange clearing firm. Between January 1, 2005 and the June 2005 expiration, there were 3,171,075 separate transactions in the June futures contract, with a total volume of 58,696,780 contracts. The transaction data that the Exchange maintains, and also provides to the Commission, contains at least 93 fields of data for open auction trades and at least 56 fields of data for electronic trades. The data contains, among other things, alphabetical or numeric identifiers for the clearing firms, the traders or brokers, and the customers with respect to each and every trade, the majority of which have no relevance to the Plaintiffs' case. Therefore, the CBOT objected to the Plaintiffs' request that the Exchange produce a daily transaction log on the grounds that the request was overbroad and burdensome.

In a similar context in this case, the U.S. District Court for the Northern District of Illinois refused to compel Goldman Sachs & Company, a non-party, to produce " . . . all documents for all trading activity in 10-Year U.S. Treasury Notes by all of its customers (including non-PIMCO customers) during [a] six-month period . . . which includes thousands of customers and potentially hundreds of thousands of trades", finding that the request was unreasonable and oppressive   A copy of the Court's Order is attached as Exhibit G. The Court upheld the order of the Magistrate Judge who had denied the motion to compel production of non-PIMCO documents, noting that the Plaintiffs had failed to demonstrate their relevance and that they were embarking on "a

classic fishing expedition." A copy of the Magistrate Judge's Order is attached as Exhibit H. The Plaintiffs' request for a CBOT daily transaction log is a similar fishing expedition.

Rule 45(c)(3)(B) of the Federal Rules of Civil Procedure permits a court to quash a subpoena that requires disclosure of confidential commercial information. The detailed information about the individual transactions of the CBOT's customers that would be reflected in a daily transaction log constitutes the confidential commercial information of both such customers and the CBOT. The Exchange is required to publish information on a daily basis regarding settlement prices, volume, open interest, and opening and closing ranges for all of its actively traded futures and options contracts. Section 5(d)(8) of the CEA, 7 U.S.C. §7(d)(8). The Exchange also publishes a variety of historical market data on its website, and has given the URLs for that data to the Plaintiffs. However, a daily transaction log reflecting the details of individual customers' trades is not published nor otherwise made available to the public, and has consistently been treated as confidential by the Exchange.

Under Rule 45(c)(3)(B), a court may order production upon specified conditions, but only if the requester shows a substantial need for the information that cannot be otherwise met without undue hardship. The Plaintiffs have made no such showing here. A daily transaction log would contain an extraordinary amount of information that is irrelevant to Plaintiffs' claims. Moreover, the Plaintiffs should be able to easily obtain account statements, order information, and/or large trader reports regarding the transactions of the Defendants (or other market participants) directly from such market participants or their clearing firm(s).

III.    The Commission should not be required to produce large
        trader reports

Confidential large trader reports are filed both with the Exchange and with the

CFTC on a daily basis by traders' clearing firms when such traders' positions exceed

specified reporting levels.  The CBOT and the CFTC both use such reports as a key tool

in their parallel monitoring of the expiration of each CBOT futures contract.

In the March 3, 2006 subpoena that Plaintiffs had served on the CBOT, they had

requested large trader reports for all large traders in U.S. Ten Year Treasury Note futures

contracts for the period between March 1 and July 31, 2005.  In the CBOT's Response to

the Plaintiffs' Motion to Compel, pending in the Northern District of Illinois, the CBOT

argued that this request was overbroad, in that it sought such reports for a five-month

period for all large traders.  The Plaintiffs have requested an even broader category of

large trader reports from the CFTC in that they have expanded the time period to that

between January 1, 2005 and September 30, 2005, a nine-month period rather than a five-

month period.

In the Plaintiffs' November 16, 2006 Reply to the CBOT's Response to the

Motion to Compel, pending in the Northern District of Illinois, the Plaintiffs narrowed

their request to the CBOT, and are now seeking to compel production of such large trader

reports only for the period from April 30, 2005 through July 10, 2005, without prejudice

to their seeking more large trader reports if warranted by future developments.

Even if the Plaintiffs were willing to similarly limit the time period for those

reports that they are seeking from the CFTC, their request is overbroad in that it seeks

reports filed by all large traders.  Moreover, as with a daily transaction log, large trader

reports contain confidential commercial information in that they reveal the specific

futures positions of identified large traders.  Therefore, they should not be required to be produced. Fed.R.Civ.P. 45(c)(3)(B).

Plaintiffs have offered differing and contradictory statements regarding their need for the large trader reports.  Plaintiffs' stated in their Motion to Compel production by the CBOT, pending in the Northern District of Illinois, that they needed the large trader reports in order to understand and evaluate the defendants' activities.  If the Plaintiffs want to obtain any relevant large trader reports pertaining to the defendants, they can obtain them from the defendants' clearing firm or firms.  The information contained therein should also be available directly from the defendants.

The Plaintiffs also argued in their Motion to Compel that the large trader reports would be relevant to plaintiffs' claims of manipulation because they show the futures and option positions of traders that hold positions at or above the specified reporting levels.  While continuing to argue in their Reply to the CBOT's Response that the constituency, concentration and identities of the large traders may be helpful in proving manipulation, the Plaintiffs made the new argument that they needed the large trader reports to assist in the identification of class members and to assist plaintiffs' experts in the development and preparation of class-wide damage models.  In particular, the Plaintiffs stated that the timing of changes in positions affects the amount of damages to each trader and the aggregate class damages.  However, the fact that a particular trader reduced or increased its position on a given day would not shed any light on the issue of damages.  The large trader data contains no information whatsoever about the prices at which a particular large trader bought or sold its contracts, and would not reveal whether the trader made or lost money.

In sum, the Plaintiffs have made contradictory arguments regarding their need for the large trader reports in that they have explicitly stated that the reports will help them to identify potential class members while implicitly arguing that the reports may help them to identify potential additional defendants.  It is clear that the request for large trader reports is simply a fishing expedition.

IV.    Conclusion

A daily transaction log and the large trader reports contain significant information which is irrelevant to this litigation.  Therefore, these requests are overbroad, unreasonable and oppressive.   The requests seek confidential commercial information and the Plaintiffs have not shown a substantial need for these documents.

For all of the above reasons, the CBOT respectfully requests that this Court quash the Subpoena that the Plaintiffs served on the Commission insofar as it seeks production of a CBOT daily transaction log and large trader reports.

Respectfully submitted,

Chicago Board of Trade                           BOARD OF TRADE OF THE CITY
141 West Jackson Boulevard                   OF CHICAGO, INC.
6th Floor, Legal Department
Chicago, Illinois 60604                           By: _____/s/_____
Telephone: (312) 435-3757                            Anne Polaski
Facsimile: (312) 435-3623

                                                            _____/s/_____
                                                            Thomas A.  Davis
                                                            DC Bar No. 40931
                                                            Davis & Harman LLP
                                                            The Willard
                                                            1455 Pennsylvania Avenue, N.W.
                                                            Suite 1200
                                                            Washington, D.C. 20004

Dated:  December 6, 2006

## CERTIFICATE OF SERVICE

I, Anne Polaski, an attorney for the Board of Trade of the City of Chicago, Inc.,

hereby certify that on December 6, 2006, I caused a copy of the Chicago Board of

Trade's Motion to Quash, to be served by messenger on:

> Marvin A. Miller
> Jennifer W. Sprengel
> Anthony F. Fata
> Miller Faucher and Cafferty LLP
> 30 North LaSalle Street, Suite 3200
> Chicago, Illinois 60602
>
> William J. Nissen
> Eric J. Grush
> Jennifer Tan
> Sidley Austin LLP
> One Dearborn Street
> Chicago, Illinois 60603
>
> Michael T. Hannafan
> Michael T. Hannafan & Associates, Ltd.
> One East Wacker Drive
> Suite 1208
> Chicago, Illinois 60601

and by Federal Express on:

> Benjamin J. Weir
> Finkelstein, Thompson & Loughran
> 1050 30th Street, N.W.
> Washington, D.C. 20007
>
> Christopher Lovell
> Gary S. Jacobson
> Merrick S. Rayle
> Craig Essenmacher
> Lovell, Stewart Halebian, LLP
> 500 Fifth Avenue
> New York, New York 10110

Geoffrey M. Horn
Vince Briganti
Lowey Dannenberg Bemporad & Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, New York 10601

Louis F. Burke
Louis F. Burke, P.C.
460 Park Avenue
New York, New York 10022

David Kotler
Dechert LLP
Prinecton Pike Corporate Center
997 Lenox Drive
Building 3, Suite 210
Lawrenceville, New Jersey 08648

Secretary of the Commission
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

Glynn Mays
Gloria Clement
Office of General Counsel
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

_____/s/_____
Anne Polaski

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case – SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____ COLUMBIA _____

JOSEF A. KOHEN, BREAKWATER TRADING LLC,
and RICHARD HERSHEY

v.

PACIFIC INVESTMENT MANAGEMENT COMPANY LLC,
PIMCO FUNDS, and JOHN DOES 1-100

**SUBPOENA IN A CIVIL CASE**

Case Number: 05 C 4681
Northern District of Illinois

TO:  Commodity Futures Trading Commission
Secretary of the Commission
Three Lafayette Centre, 1155 21st Street, NW, Washington DC 20581

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE EXHIBIT A ATTACHED.

| PLACE  Anthony F. Fata (312.782-4880) c/o Esquire Deposition Services, 1020 19th Street NW, #620A Washington, DC 20036 | DATE AND TIME  September 12, 2006 10:00 A.M. |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  ATTORNEY FOR PLAINTIFF | DATE  September 5, 2006 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
ANTHONY FATA, MILLER FAUCHER & CAFFERTY LLP
30 NORTH La SALLE STREET, CHICAGO, IL 60602
(312) 782-4880

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

# PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**
**Commodity Futures Trading Commission**

## I.  DEFINITIONS

1.    "CBOT" means the Chicago Board of Trade.

2.    "U.S. Treasury" means the United States Department of the Treasury.

3.    "United States Ten Year Treasury Note" means a United States Government-debt security maturing after August 2011 and prior to November 2015.

4.    "February 2012 Note" means a United States Ten Year Treasury Note maturing in February 2012.

5.    "August 2012 Note" means United States Ten Year Treasury Note maturing in August 2012.

6.    "March 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in March 2005.

7.    "June 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in June 2005.

8.    "September 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in September 2005.

9.    "December 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in December 2005.

10.    "2005 Futures Contracts" means the March 2005 Futures Contract, June 2005 Futures Contracts, September 2005 Futures Contract and/or December 2005 Futures Contract.

11.    "PIMCO" means Pacific Investment Management Company LLC, the institutional money manager specializing in fixed income management which is incorporated in the state of Delaware, and who is headquartered in Newport Beach, California.  PIMCO also means any

entity in which PIMCO, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which PIMCO manages.

12.    "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered open-ended management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which PIMCO Funds manages.

13.    "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which Citadel manages.

14.    "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda, notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

15.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

17.    "Person" means any natural person or any business, legal or governmental entity or association.

18.    "You" or "your" means the recipient of this subpoena *duces tecum*.

19.    "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2

II.    **RELEVANT PERIOD**

The relevant period, unless otherwise indicated, is from January 1, 2005 to September 30, 2005, and shall include all documents and information that relate, in whole or in part, to the relevant period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior, or subsequent to the relevant period.

III.    **INSTRUCTIONS**

1.    These discovery requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto.

2.    Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3.    If any portion of any document is responsive to any request, then the entire document must be produced. If any requested document cannot be produced in full, please produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document.

4.    Documents shall be produced in the medium in which they are kept in the ordinary course of business, *e.g.*, all documents and data that are maintained in electronic form shall be produced in their native format, including all available back-up or disaster recovery materials, but shall not be converted to any other format such as a tiff image or PDF file. All documents produced in electronic format must include all attendant meta-data. All electronic mail shall be provided in its native format (e.g., .pst, .nsf, .xls, .doc, etc.).

3

5.    Documents shall be produced in the order in which they appear in your files, and documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

6.    If any responsive document was, but is no longer, in the possession or subject to the control of the responding party, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. For each instance, please state the date or approximate date of such disposition and explain the circumstances surrounding such disposition.

7.    If any responsive document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, confidentiality or trade secret, please set forth separately with respect to each such document: (a) the nature of the privilege or other rule relied upon in withholding production of the document; (b) the type of document (e.g., letter, memorandum, etc.); (c) the general subject matter of the document; (d) the date of the document; and (e) such other information as is sufficient to identify the document for a *subpoena duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

8.    If a portion of any responsive document is protected from disclosure by privilege, work product or any other reason, such document must be produced with redaction of the portion claimed to be protected.

9.    Provide each document in English, accompanied by an English translation, and provide a glossary of all terms of art and abbreviations used.

IV.    **DOCUMENTS TO BE PRODUCED**

4

1.    All documents constituting, referring, relating to, evidencing, or sufficient to show large trader report forms concerning or relating to United States Ten Year Treasury Note futures contracts for the period during the relevant period.

2.    All documents constituting, referring, relating to, evidencing, or sufficient to show the daily position of PIMCO and/or PIMCO Funds with any CBOT clearing members or otherwise in United States Ten Year Treasury Note futures contracts during the relevant period.

3.    Documents sufficient to show (a) the names and addresses of CBOT clearing members during the relevant period, and (b) the names and addresses of customers who traded June 2005 Futures Contracts between May 13 and June 30, 2005 (including by making or taking delivery).

4.    All documents constituting, referring, relating to, or evidencing communications with Citadel, PIMCO, PIMCO Funds, or any PIMCO related entity or any employee or agent of the foregoing relating to 2005 Futures Contracts or the cheapest to deliver notes on 2005 Futures Contracts.

5.    All documents reflecting, calculating or relating to the deliverable or available supply or "float" of cheapest to deliver, or other notes available to be delivered on 2005 Futures Contracts, or to the amount of cheapest to deliver or other deliverable notes held by PIMCO, PIMCO Funds, or other market participants.

6.    All documents constituting, referring, relating to or evidencing communications between the Commodity Futures Trading Commission and others concerning the June 2005 Futures Contract and/or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, those relating to a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary

prices, price movements, price relationships, liquidation patterns, trading activity and/or deliveries for such contracts and notes.

7.    All documents constituting, referring, relating to or evidencing communications between the CBOT and others concerning the June 2005 Futures Contract or the cheapest to deliver or other U.S. Treasury notes deliverable on the June 2005 Futures Contract, including, but not limited to, a "squeeze," "corner," "manipulation," and/or a "congestion" therein, and/or unusual, abnormal, or out of the ordinary prices, price movement, or price relationships or liquidation patterns, trading activity and/or deliveries of such contracts and notes.

8.    All documents concerning PIMCO's and/or PIMCO Funds' market-on-close transactions on the last day of trading for the June 2005 Futures Contracts, or June 21, 2005, during the relevant period.

9.    All documents concerning and/or sufficient to identify time and sales of futures trading for June 2005 Futures Contracts during the relevant period, including, but not limited to, a daily transaction log in chronological order.

10.    All documents concerning and/or sufficient to identify a record of deliveries for June 2005 Futures Contracts during the relevant period.

11.    All documents and/or communications concerning PIMCO's and/or PIMCO Funds' repurchase transactions and/or reverse repurchase transactions during the relevant period.

12.    All documents concerning and/or sufficient to identify short trading of June 2005 Futures Contract during the relevant period.

13.    All documents concerning a "squeeze," "corner", "manipulation", and/or "congestion" of June 2005 futures contracts or the February 2012 Notes during the relevant period.

6

14.   All documents concerning market-on-close buy orders placed by PIMCO and/or PIMCO Funds of the June 2005 Futures Contracts and/or the February 2012 Notes during the relevant period.

15.   All documents concerning disciplinary action take in connection with orders on the last day of trading of the June 2005 Futures Contract, or June 21, 2005 during the relevant period, including, but not limited to, records of disciplinary action against:

     a.    Floor Brokers;

     b.    Futures Commission Merchants;

     c.    Commodity Exchange Members;

     d.    Clearing Members; or

     e.    anyone other individual and/or entity.

16.   All documents, data and/or information concerning "general collateral" overnight repurchase rates in connection with U.S. Treasury securities during the relevant period.

17.   All documents, data and/or information concerning "general collateral" term repurchase rates, including, but not limited to, documents sufficient to identify the term of the transaction, in connection with U.S. Treasury securities during the relevant period.

18.   All documents, data and/or information concerning "special" overnight repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the transaction, the maturity date and the CUSIP number, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

19.   All documents, data and/or information concerning "special" term repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the

transaction, the maturity date and the CUSIP number, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

20.    Any documents, data, information, correspondence, and/or records concerning "failed" deliveries on repurchase transactions collateralized by U.S. Treasury securities, including for each "failed" delivery, the maturity and CUSIP of the security, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes during relevant period.

21.    All documents, data, information, correspondence and/or records concerning the holdings or positions in U.S. Treasury securities deliverable against 2005 Futures Contracts held by market participants during relevant period.

22.    All documents, data, information, correspondence and/or records concerning the holdings or positions in 2005 Futures Contracts held by market participants during the relevant period.

23.    All documents, data, information, correspondence and/or records concerning the prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

24.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the relative prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

25.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the valuation of 2005 Futures Contracts relative to (a) the value of other futures contracts, (b) the prices of cash Treasury securities, and (c) other fixed income instruments (e.g., swap yields) during relevant period.

26.    All documents, information, correspondence and/or records concerning the intentions (make/take delivery vs. liquidate futures positions) of participants in the 2005 Futures Contracts during the relevant period.

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

EXHIBIT B

AO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# United States District Court

## NORTHERN DISTRICT OF ILLINOIS

Josef A. Kohen, Breakwater Trading LLC
and Richard Hershey, Plaintiffs

v.

Pacific Investment Management Company LLC,
PIMCO Funds, et al., Defendants.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1] 05C 4681

TO: Chicago Board of Trade
141 West Jackson Boulevard, Chicago, IL 60604.

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See Attached Exhibit A**

| PLACE Miller, Faucher, and Cafferty LLP, 30 North LaSalle Street, Suite 3200, Chicago, IL 60602 (312) 782-4880 | DATE AND TIME April 3, 2006 at 10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)       Dated March 3, 2006
*Ryan E. Long*  BY: AFF
Ryan E. Long, Lovell Stewart Halebian LLP - Counsel for Plaintiffs

Issuing Officer's Name, Address, and Phone Number
Ryan E. Long, 500 Fifth Avenue, Suite 5800, New York, New York 10110

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE *Chicago Board of Trade* |
|---|---|---|
| SERVED | *3/3/06* | *141 W. W Jackson Chicago, IL. 60604* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| *John Burda* | *Asst General Csl. (Personal)* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Jorge Ramirez* | *Law Clerk* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    *3/3/06*
                DATE

SIGNATURE OF SERVER    *Jorge Ramirez*

ADDRESS OF SERVER    *30 N. La Salle Chicago, IL 60602*

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**Exhibit "A"**

## INSTRUCTIONS

1.      Unless a specific request indicates otherwise, this request calls for production of documents dated, prepared, received or used by you during the period from March 1, 2005 through July 31, 2005. However, if a document prepared before March 1, 2005 is necessary for a correct and/or complete understanding of any document covered by the request, such earlier document shall be produced.

2.      In responding to this document request, you are required to furnish all documents that are available or accessible to you, including documents in your possession, custody or control.

3.      For each document withheld on a claim of work product, attorney-client, investigative, deliberative document or other privilege, provide the following information:

      a.      the date the document bears or the date upon which it was prepared;

      b.      the author(s) of the document;

      c.      the addressee(s) or recipient(s) of the document;

      d.      the title and subject matter of the document; and

      e.      the nature of the privilege claim and the factual and legal basis thereof.

4.      If any document requested was, but is no longer, in your possession, custody or control, or is no longer in existence, please provide the following information:

      a.      whether it is missing or lost;

      b.      whether it has been destroyed;

      c.      whether it has been transferred, voluntarily or involuntarily, to others; or

      d.      whether it has been otherwise disposed of.

For each such document, explain the circumstances surrounding such disposition, give the date thereof and identify those persons to whom the document was transferred or who has knowledge thereof.

5.      Provide each document in English, or accompanied by an English translation, and provide a

glossary of all terms of art and abbreviations used in any report of computer print-out.

## DEFINITIONS

1. "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda, notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "Concerning" means relating to, referring to, describing, evidencing or constituting.

4. "United States Ten Year Treasury Note" means a United States Government-debt security maturing after August 2011 and prior to November 2015.

5. "Person" means any natural person or any business, legal or governmental entity or association.

6. "You" or "your" means the recipient of this subpoena *duces tecum*.

7. "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8. "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund of other investment entity which Citadel manages.

9. "PIMCO LLC" means Pacific Investment Management Company LLC, the institutional money manager specializing in fixed income management which is incorporated in the state of Delaware, and who is headquartered in Newport Beach, California. PIMCO LLC also means any entity in which PIMCO LLC, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which PIMCO LLC manages.

10. "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered opened end

2

management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its

parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which

PIMCO Funds manages.

## DOCUMENTS TO BE PRODUCED

1.    All documents constituting, referring, relating to, evidencing, or sufficient to show large trader

report forms concerning or relating to United States Ten Year Treasury Note futures contracts for the

period between March 1 and July 31, 2005.

2.    All documents constituting, referring, relating to, evidencing, or sufficient to show the daily

position of PIMCO LLC and/or PIMCO Funds with any CBOT clearing members or otherwise in United

States Ten Year Treasury Note futures contracts between March 1 and July 31, 2005.

3.    Documents sufficient to show (a) the names and addresses of CBOT clearing members between

May 1 and July 1, 2005, and (b) the names and addresses of customers who traded June 2005 United States

Ten Year Treasury Note futures contracts ("June 2005 Contracts") between May 13 and June 30, 2005

(including by making or taking delivery).

4.    All documents constituting, referring, relating to, or evidencing communications with Citadel,

PIMCO LLC, PIMCO Funds, or any PIMCO related entity or any employee or agent of the foregoing

relating to June 2005 Contracts, March 2005 United States Ten Year Treasury Note futures contracts

("March 2005 Contracts") or the cheapest to deliver notes on either the June Contract or March Contract.

5.    All documents reflecting, calculating or relating to the deliverable or available supply or "float"

of cheapest to deliver, or other notes available to be delivered. on March 2005 or June 2005 Contracts, or

to the amount of cheapest to deliver or other deliverable notes held by PIMCO LLC, PIMCO Funds, or

others.

6.    All documents constituting, referring, relating to or evidencing communications between you

and others concerning the June 2005 Contract or the cheapest to deliver or other U.S. Treasury notes

deliverable on the June 2005 contract, including, but not limited to, a "short squeeze," "corner" and/or

unusual, abnormal, or out of the ordinary dislocation in the price of such contracts and notes.

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

# EXHIBIT C


**Chicago Board of Trade**

Anne Spencer Polaski
Assistant General Counsel
Legal Department

April 12, 2006

**BY FEDERAL EXPRESS**

Ryan E. Long
Lovell, Stewart Halebian, LLP
500 Fifth Avenue
Suite 5800
New York, New York 10110

Re:    Josef A. Kohen, Breakwater Trading LLC and Richard Hershey v. Pacific
        Investment Management Company LLC, PIMCO Funds, et al.

Dear Mr. Long:

This letter is in response to the subpoena issued to the Chicago Board of Trade in the
above-captioned matter.

We have enclosed the following:

> A list of the names and addresses of all CBOT clearing members between May 1
> and July 1, 2005.

> Various documents relating to the CBOT's positions limits in Treasury Futures,
> including CBOT Notices, rule filings with the Commodity Futures Trading
> Commission and the Department of the Treasury, and documents posted on the
> CFTC's website regarding the rule filing and the Commission's approval.

As we discussed in our recent telephone conversation, many of the documents that you
have requested have been obtained by the Exchange in connection with its fulfillment of
its self-regulatory responsibilities. We have a statutory obligation to monitor trading to
prevent manipulation, price distortion, and disruptions of the delivery process. In
furtherance of that obligation, in connection with every futures expiration, the CBOT's
Office of Investigations and Audits collects information on traders' market activity
through large trader reports, and through ongoing conversations with large market
participants concerning their futures and cash positions, their intentions, and their trading
strategies.

It is crucial that the Exchange maintain the confidentiality of the information that it
obtains in connection with such market surveillance in order to encourage market
participants to cooperate in providing information to the Exchange. Therefore, federal
courts have recognized a qualified privilege with respect to subpoenas that have sought

access to investigatory materials compiled by futures exchanges or other self-regulatory organizations.  See Section 8c(a)(2) of the Commodity Exchange Act, 7 U.S.C. §12c(a)(2); *Apex Oil Company v. DiMauro*, 110 F.R.D. 490 (S.D.N.Y. 1985); *Ross v. Bolton*, 106 F.R.D. 22 (S.D.N.Y. 1985).  In particular, these decisions have held that the litigants are not entitled to discovery of investigatory materials absent a showing of particularized need.

A number of the requests that you have made are overbroad, e.g., the request for all large trader report forms "concerning or relating to United States Ten Year Treasury Note futures contracts" for a five month period and "the names and addresses of customers who traded June 2005 United States Ten Year Treasury Note futures contracts . . . between May 13 and June 30, 2005."  Large trader reports relating to the defendants in the lawsuit, and account statements showing their daily positions, should be readily available from either the defendants themselves or their clearing firms.

Documents directly evidencing communications with Citadel, various PIMCO entities, or other persons should be obtainable directly from those entities or persons.  CFTC Regulation 140.72 prohibits the Exchange from disclosing any information that it has received from the Commission.  Any other documents in the Exchange's possession that relate to communications with others constitute investigative work-product.

Any documents relating to the deliverable supply of notes, which are in the possession of the Exchange, other than opinions that were expressed in communications addressed above, are publicly-available news articles or analysts' reports.

If you wish to discuss any of these matters further, please feel free to call me.

Sincerely,

Anne Polaski

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

# EXHIBIT D

AO 88 (Rev. 1/94) Subpoena in a Civil Case – SDNY WEB 4/99

**Issued by the**
# UNITED STATES DISTRICT COURT

_____ NORTHERN _____ DISTRICT OF _____ ILLINOIS _____

JOSEF A. KOHEN, BREAKWATER TRADING LLC,
and RICHARD HERSHEY

**SUBPOENA IN A CIVIL CASE**

V.

Case Number: [1]   05 C 4681
Northern District of Illinois

PACIFIC INVESTMENT MANAGEMENT COMPANY LLC,
PIMCO FUNDS, and JOHN DOES 1-100

TO:   Chicago Board of Trade
      141 West Jackson Boulevard
      Chicago, IL 60604-2994

| | |
|---|---|
| ☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case. | |
| PLACE OF TESTIMONY | COURTROOM |
| | DATE AND TIME |

| | |
|---|---|
| ☐  YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case. | |
| PLACE OF DEPOSITION | DATE AND TIME |

| | |
|---|---|
| ☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):<br><br>SEE EXHIBIT A ATTACHED. | |
| PLACE<br><br>MILLER FAUCHER & CAFFERTY LLP<br>30 NORTH La SALLE STREET, SUITE 3200<br>CHICAGO, IL 60602 | DATE AND TIME<br>August 23, 2006<br>10:00 A.M. |

| | |
|---|---|
| ☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
| PREMISES | DATE AND TIME |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* ... <br> ATTORNEY FOR PLAINTIFF | August 9, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
ANTHONY FATA, MILLER FAUCHER & CAFFERTY LLP
30 NORTH La SALLE STREET, CHICAGO, IL 60602
(312) 782-4880

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

CF
8/10/06

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## EXHIBIT A
## CHICAGO BOARD OF TRADE

I.    **DEFINITIONS**

1.    "CBOT" means the Chicago Board of Trade.

2.    "U.S. Treasury" means the United States Department of the Treasury.

3.    "United States Ten Year Treasury Note" means a United States Government-debt security maturing after August 2011 and prior to November 2015.

4.    "February 2012 Note" means a United States Ten Year Treasury Note maturing in February 2012.

5.    "August 2012 Note" means United States Ten Year Treasury Note maturing in August 2012.

6.    "March 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in March 2005.

7.    "June 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in June 2005.

8.    "September 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in September 2005.

9.    "December 2005 Futures Contract" means the CBOT Ten Year Treasury Note futures contract deliverable in December 2005.

10.    "2005 Futures Contracts" means the March 2005 Futures Contract, June 2005 Futures Contracts, September 2005 Futures Contract and/or December 2005 Futures Contract.

11.    "PIMCO" means Pacific Investment Management Company LLC, the institutional money manager specializing in fixed income management which is incorporated in the state of Delaware, and who is headquartered in Newport Beach, California. PIMCO also means any

entity in which PIMCO, its parents, or its subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which PIMCO manages.

12.    "PIMCO Funds" means PIMCO Funds, a Massachusetts trust and registered open-ended management investment company, its parents, subsidiaries, any entity in which PIMCO Funds or its parents or subsidiaries holds a controlling interest, and/or any hedge fund or other investment entity which PIMCO Funds manages.

13.    "Citadel" means Citadel Investment Group LLC, its parents, subsidiaries, any entity in which Citadel, its parents, or subsidiaries hold a controlling interest, and/or any hedge fund or other investment entity which Citadel manages.

14.    "Document" shall have the full meaning ascribed to it in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, audio recordings, personal diaries, day-timers, memoranda, notes, phone logs, trader logs, facsimiles, electronic mail, and electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

15.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

16.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

17.    "Person" means any natural person or any business, legal or governmental entity or association.

18.    "You" or "your" means the recipient of this subpoena *duces tecum*.

19.    "And/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2

## II.    RELEVANT PERIOD

The relevant period, unless otherwise indicated, is from January 1, 2005 to September 30, 2005, and shall include all documents and information that relate, in whole or in part, to the relevant period, or to events or circumstances during such period, even though dated, prepared, generated, or received prior, or subsequent to the relevant period.\

## III.    INSTRUCTIONS

1.    These discovery requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto.

2.    Documents shall be produced regardless of whether they are in your possession or within the control of your attorneys or their agents, employees, representatives, or investigators.

3.    If any portion of any document is responsive to any request, then the entire document must be produced.  If any requested document cannot be produced in full, please produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document.

4.    Documents shall be produced in the medium in which they are kept in the ordinary course of business, *e.g.*, all documents and data that are maintained in electronic form shall be produced in their native format, including all available back-up or disaster recovery materials, but shall not be converted to any other format such as a tiff image or PDF file.  All documents produced in electronic format must include all attendant meta-data.  All electronic mail shall be provided in its native format (e.g., .pst, .nsf, .xls, .doc, etc.).

5.     Documents shall be produced in the order in which they appear in your files, and documents shall not be shuffled or otherwise rearranged. Documents that were stapled, clipped, or otherwise fastened together in their original condition shall be produced in such form.

6.     If any responsive document was, but is no longer, in the possession or subject to the control of the responding party, please state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of. For each instance, please state the date or approximate date of such disposition and explain the circumstances surrounding such disposition.

7.     If any responsive document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, confidentiality or trade secret, please set forth separately with respect to each such document: (a) the nature of the privilege or other rule relied upon in withholding production of the document; (b) the type of document (e.g., letter, memorandum, etc.); (c) the general subject matter of the document; (d) the date of the document; and (e) such other information as is sufficient to identify the document for a *subpoena duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

8.     If a portion of any responsive document is protected from disclosure by privilege, work product or any other reason, such document must be produced with redaction of the portion claimed to be protected.

9.     Provide each document in English, accompanied by an English translation, and provide a glossary of all terms of art and abbreviations used.

## IV.    **DOCUMENTS TO BE PRODUCED**

1.    All documents concerning PIMCO's and/or PIMCO Funds' market-on-close transactions on the last day of trading for the June 2005 Futures Contracts, or June 21, 2005, during the relevant period.

2.    All documents concerning and/or sufficient to identify time and sales of futures trading for June 2005 Futures Contracts during the relevant period, including, but not limited to, a daily transaction log in chronological order.

3.    All documents concerning and/or sufficient to identify a record of deliveries for June 2005 Futures Contracts during the relevant period.

4.    All documents and/or communications concerning PIMCO's and PIMCO Funds' repurchase transactions and/or reverse repurchase transactions of U.S. Treasury securities during the relevant period.

5.    All documents concerning and/or sufficient to identify short trading of June 2005 Futures Contract during the relevant period.

6.    All documents concerning a "squeeze", "corner", and/or "manipulation" of June 2005 Futures Contracts or the February 2012 Notes, or a "congestion" therein, during the relevant period.

7.    All documents concerning market-on-close buy orders placed by PIMCO and/or PIMCO Funds of the June 2005 Futures Contracts and/or the February 2012 Notes during the relevant period.

8.    All documents concerning disciplinary action taken in connection with orders on the last day of trading of the June 2005 Futures Contract, or June 21, 2005 during the relevant period, including, but not limited to, records of disciplinary action against:

     a.     Floor Brokers;

     b.     Futures Commission Merchants;

     c.     Commodity Exchange Members;

     d.     Clearing Members; or

     e.     anyone other individual and/or entity.

9.     All documents, data and/or information concerning "general collateral" overnight repurchase rates in connection with U.S. Treasury securities during the relevant period.

10.     All documents, data and/or information concerning "general collateral" term repurchase rates, including, but not limited to, documents sufficient to identify the term of the transaction, in connection with U.S. Treasury securities during the relevant period.

11.     All documents, data and/or information concerning "special" overnight repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the transaction, the maturity date and the CUSIP number of the security used to collateralize the transaction, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

12.     All documents, data and/or information concerning "special" term repurchase rates for repurchase transactions collateralized by U.S. Treasury securities specifying the term of the transaction, the maturity date and the CUSIP number of the security used to collateralize the transaction, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes, during the relevant period.

13.     Any documents, data, information, correspondence, and/or records concerning "failed" deliveries on repurchase transactions collateralized by U.S. Treasury securities, including for

each "failed" delivery, the maturity and CUSIP of the security, including, but not limited to, transactions collateralized by the February 2012 and August 2012 Notes during relevant period.

14.    All documents, data, information, correspondence and/or records concerning the holdings or positions in U.S. Treasury securities deliverable against 2005 Futures Contracts held by market participants during relevant period.

15.    All documents, data, information, correspondence and/or records concerning the holdings or positions in 2005 Futures Contracts held by market participants during the relevant period.

16.    All documents, data, information, correspondence and/or records concerning the prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

17.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the relative prices or yields of Treasury Notes deliverable against 2005 Futures Contracts during the relevant period.

18.    All documents, data, information, correspondence, and/or records sufficient to identify analysis of the valuation of 2005 Futures Contracts relative to (a) the value of other futures contracts, (b) the prices of cash Treasury securities, and (c) other fixed income instruments (e.g., swap yields) during relevant period.

19.    All documents, information, correspondence and/or records concerning the intentions (make/take delivery vs. liquidate futures positions) of participants in the 2005 Futures Contracts during the relevant period.

20.    All documents, minutes, notes, memoranda, and/or correspondence from the Business Conduct Committee and/or its members concerning 2005 Futures Contracts during the relevant period.

21.    All documents, minutes, notes, memoranda, correspondence and/or presentations created or maintained by CBOT Market Surveillance staff concerning 2005 Futures Contracts during the relevant period.

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

**EXHIBIT E**


**Chicago Board of Trade**

**Anne Spencer Polaski**
Assistant General Counsel
Legal Department

August 23, 2006

<u>BY MESSENGER</u>

Anthony Fata
Miller Faucher & Cafferty LLP
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602

Re:    Josef A. Kohen, Breakwater Trading LLC, and Richard Hershey v. Pacific
       Investment Management Company LLC, PIMCO Funds, et al.

Dear Mr. Fata:

This letter is in response to the subpoena issued to the Chicago Board of Trade
("CBOT®" or "Exchange") on August 9, 2006 in the above-captioned matter.  I have
enclosed a number of documents that may be responsive to your subpoena.

However, as I had previously discussed with Christopher Lovell and other attorneys with
Lovell, Stewart Halebian, LLP, and in my April 12, 2006 letter to Ryan Long of that law
firm, in response to the March 3, 2006 subpoena issued to the CBOT in this matter, many
of the documents that you have requested have been obtained by the Exchange in
connection with its fulfillment of its self-regulatory responsibilities.  We have a statutory
obligation to monitor trading to prevent manipulation, price distortion, and disruptions of
the delivery process.  In furtherance of that obligation, in connection with every futures
expiration, the CBOT's Office of Investigations and Audits collects information on
traders' market activity through large trader reports, and through ongoing conversations
with large market participants concerning their futures and cash positions, their
intentions, and their trading strategies.

It is crucial that the Exchange maintain the confidentiality of the information that it
obtains in connection with such market surveillance in order to encourage market
participants to cooperate in providing information to the Exchange.  Therefore, federal
courts have recognized a qualified privilege with respect to subpoenas that have sought
access to investigative materials compiled by futures exchanges or other self-regulatory
organizations.  See Section 8c(a)(2) of the Commodity Exchange Act, 7 U.S.C.
§12c(a)(2); *Apex Oil Company v. DiMauro*, 110 F.R.D. 490 (S.D.N.Y. 1985); *Ross v.
Bolton*, 106 F.R.D. 22 (S.D.N.Y. 1985).  In particular, these decisions have held that
litigants are not entitled to discovery of investigatory materials absent a showing of
particularized need.

Anthony Pate
August 23, 2006
Page 2

A number of the requests that you have made are overbroad and burdensome, as identified below, while the documents that specifically relate to PIMCO or PIMCO Funds can be obtained directly from those entities. In addition, some of the information in the Exchange's files has been obtained from the Commodity Futures Trading Commission ("CFTC"), and CFTC Regulation 140.72 prohibits the Exchange from disclosing any information that it has received from that agency except in the context of the Exchange's exercise of its own self-regulatory responsibilities. Other documents that you have requested are subject to the attorney-client privilege, the work product privilege, the deliberative process privilege and/or the mental process privilege as identified below.

This letter addresses your requests in the order that they are set forth in the subpoena.

1.     The following documents are being withheld pursuant to the qualified privilege for investigative materials recognized in the case law referenced above, and/or work product, mental process or deliberative process privileges.

      (a)     A letter from William Lange to Jim Keller, dated June 23, 2005, and a letter from Jim Keller to William Lange, dated June 28, 2005. These letters can be obtained directly from PIMCO.

      (b)     Office of Investigations and Audits ("OIA") staff memo to close an inquiry relating to a broker's execution of one of PIMCO's orders on June 21, 2005. This is the work product of Exchange Market Surveillance staff and is also subject to the mental process and deliberative process privileges.

      (c)     Transcripts of recordings related to the execution of two of PIMCO's orders. These can be obtained directly from Citigroup, Bear Stearns, Ardel MeKenna and William Savino.

      (d)     Summaries of investigative statements taken from Michael McDermott, Senior Vice President, Citigroup, and Ardel McKenna, a floor broker, with respect to the receipt and execution of two of PIMCO's orders. These represent the work product of OIA staff and statements can be taken directly from these individuals.

      (e)     Order tickets and broker cards relating to the execution of two of PIMCO's orders on June 21, 2005. These can be obtained directly from Citigroup, Bear Stearns, Ardel McKenna and William Savino.

2.     A computer disk containing the Exchange's Time and Sales data for June 2005 Futures contracts during the relevant period is enclosed. This data reflects the times during which various prices were active and, for trades executed electronically, the quantities that were executed at such prices. The request for a

daily transaction log in chronological order is overbroad and burdensome in that it requests a massive amount of data about the specific transactions of all market participants during a 9-month period. Account statements and order information regarding the transactions of PIMCO or PIMCO Funds can be obtained directly from those entities or their clearing firm(s).

The following historical information is available through the CBOT website for a fee:

End of day data can be accessed at
http://cbotdataexchange.if5.com/DataEODOverview.aspx.

Liquidity Data Bank information can be accessed at
http://cbotdataexchange.if5.com/Data_LDB.aspx.

Market Profile data can be accessed at
http://cbotdataexchange.if5.com/DataTickOverview.aspx.

Volume at Price data can be accessed at
http://cbotdataexchange.if5.com/Data_LDB_VAP.aspx.

3.     The Daily Issues and Stops Reports, and the CUSIPS Delivered for CBOT Financial Contracts Report, identifying deliveries with respect to June 2005 Futures Contracts during the relevant period, are enclosed.

4.     The following documents may be responsive to this request or one or more of the other requests. These documents are being withheld pursuant to the qualified privilege for investigative materials recognized in the case law referenced above.

(a)     The following e-mails, facsimiles or correspondence between PIMCO and the CBOT:

     E-mail from William Lange to Jim Keller, at 6:04 AM on 5/24/05
     E-mail from Jim Keller to William Lange, at 8:30:51 AM on 5/24/05
     E-mail from William Lange to Jim Keller, at 8:35 AM on 5/24/05
     E-mail from Jim Keller to William Lange, at 12:59:53 PM on 5/24/05
     E-mail from William Lange to Jim Keller, at 11:54 AM on 5/24/05
     E-mail from Jim Keller to William Lange, at 3:46:02 PM on 5/24/05
     FAX from Jim Keller to William Lange, on 5/25/05
     E-mail from Jim Keller to William Lange, at 10:12:57 AM on 5/26/05
     E-mail from Jim Keller to William Lange, at 1:42:05 PM on 5/26/05
     E-mail from Steve Rodosky to William Lange, at 11:57:26 AM on 5/27/05
     E-mail from William Lange to Jim Keller, at 9:20 AM on 6/2/05
     E-mail from Jim Keller to William Lange, at 11:22:48 AM on 6/2/05
     E-mail from Jim Keller to William Lange, at 10:24:55 AM on 6/3/05

E-mail from Jim Keller to William Lange, at 10:25:23 AM on 6/3/05
E-mail from Jim Keller to William Lange, at 12:39:25 PM on 6/3/05
E-mail from Jim Keller to William Lange, at 9:33:56 AM on 6/7/05
E-mail from Jim Keller to William Lange, at 8:56:51 AM on 6/8/05
E-mail from William Lange to Jim Keller, at 3:19:07 PM on 6/8/05
E-mail from Jim Keller to William Lange, at 8:39:29 AM on 6/9/05
E-mail from William Lange to Jim Keller, at 8:53 AM on 6/9/05
E-mail from Jim Keller to William Lange, at 1:40:31 PM on 6/9/05
E-mail from William Lange to Jim Keller, at 9:07:06 AM on 6/13/05
E-mail from Jim Keller to William Lange, at 1:09:33 PM on 6/13/05
E-mail from Jim Keller to William Lange, at 5:48:22 PM on 6/13/05
E-mail from Jim Keller to William Lange, at 8:47:11 AM on 6/14/05
E-mail from Steve Rodosky to William Lange, at 8:37:12 AM on 6/15/05
E-mail from William Lange to Steve Rodosky, at 1:56 PM on 6/14/05
E-mail from Steve Rodosky to William Lange, at 8:39:33 AM on 6/15/05
E-mail from William Lange to Steve Rodosky, at 9:14 AM on 6/15/05
E-mail from Jim Keller to William Lange, at 8:39 AM on 6/20/05 (a duplicate copy reflects a time of 8:38:56 AM)

Documents provided to the Exchange by PIMCO regarding its Treasury Deliverable Basket Analysis and Futures Valuation for various dates from May 25, 2005 through June 21, 2005

All of the above documents can be obtained directly from PIMCO.

(b)     Summaries of a meeting with Jim Keller on May 20, 2005, and summaries of phone conversations with either Jim Keller or Steve Rodosky on June 1, 2005, June 7, 2005, June 9, 2005, June 13, 2005, June 15, 2005, June 16, 2005, June 20, 2005, June 21, 2005, and June 24, 2005. Information about the meeting and phone conversations can be obtained directly from PIMCO.

(c)     E-mail, written correspondence, or summaries of phone conversations with various other market participants, including Fimat, Goldman Sachs, Gelber Group, JP Morgan, Citadel Group, Drawbridge, Susquehanna, UBS, Lehman Brothers Inc., Credit Suisse First Boston LLC, Citigroup, Archaeus Capital Management LLC, Mizuho, Merrill Lynch, Herb Lynch, Gary Sagui, Breakwater Trading LLC, as well as the Federal Reserve Bank of New York. Copies of these e-mails and correspondence, and information about phone conversations with these market participants or the Federal Reserve Bank of New York, can be obtained directly from these market participants or the Federal Reserve Bank of New York.

(d)     Confidential large trader data filed with the CFTC and the Exchange pursuant to CFTC and CBOT Regulations. This information can be obtained directly from the traders or their clearing firms.

Anthony Pera
August 23, 2006
Page 5

(e)    E-mails among Exchange staff and analyses and other work product of Exchange staff. Some of these documents are also being withheld pursuant to the mental process and deliberative process privileges.

(f)    E-mails, summaries of conversations, and correspondence between the CFTC and Exchange staff are also being withheld pursuant to CFTC Regulation 140.72.

(g)    E-mails between Market Surveillance staff and Exchange attorneys are also being withheld pursuant to the attorney-client privilege, and attorney notes are also being withheld pursuant to the work product privilege.

5.    This request is overbroad and burdensome in that it requests documents identifying all sales of June 2005 Futures Contracts by all market participants during a 9-month period. Documents relating to sales by or to PIMCO or PIMCO Funds can be obtained directly from those entities or their clearing firm(s).

6.    News articles and analysts' reports are enclosed which may be responsive to this request and various other requests.

7.    This request is overbroad and burdensome. See responses to Nos. 1 and 4.

8.    No disciplinary action was taken in connection with orders on the last day of trading of the June 2005 Futures Contract, or June 21, 2005, during the relevant period.

9-12.    Copies of data received from Bloomberg are enclosed.

13.    This request is overbroad and burdensome in that it asks for documents relating to all failed deliveries on all repurchase transactions collateralized by U.S. Treasury securities during a 9-month period. Some of the news articles and analysts' reports enclosed in response to No. 6 may discuss fails. Information reported to the Exchange by PIMCO is included in the privileged documents identified in response to No. 4 above, and can be obtained directly from PIMCO. Certain data in the Exchange's possession relating to fails was copied from the website of the Federal Reserve Bank of New York and can be accessed directly at http://www.newyorkfed.org/markets/pridealers_failsdata.html.

14.    This request is overbroad and burdensome in that it requests cash market information for all market participants during a 9-month period. See response to No. 4. Any information regarding positions held by PIMCO or PIMCO Funds can be obtained directly from those entities.

15.    This request is overbroad and burdensome in that it requests information relating to the futures positions in four different contract months held by all market

participants during a 9-month period. See response to No. 4. Any information regarding positions held by PIMCO or PIMCO Funds can be obtained directly from those entities.

16. Conversion factor tables are enclosed which reflect the Treasury Notes deliverable against 2005 Futures Contracts during the relevant period. Also see response to Nos. 9-12. Additional documents are included in confidential analyses and recommendations presented to the Exchange's Executive Committee and the Board of Directors, which are being withheld as confidential commercial information and which are subject to the deliberative process and mental process privileges.

17. This request is ambiguous, overbroad and burdensome. See response to Nos. 9-12.

18. This request is ambiguous, overbroad and burdensome. See response to Nos. 9-12.

19. See response to No. 4.

20. These documents are being withheld pursuant to the qualified privilege for investigative materials recognized in the case law referenced above. *See also*: *Davis v. Coopers & Lybrand*, 1992 U.S. Dist. LEXIS 9237, No. 90 Civ. 7173, 1992 WL 159504 (N.D. Ill. June 25, 1992). In addition, BCC minutes are being withheld pursuant to mental process and deliberative process privileges. A letter from the Business Conduct Committee to Jim Keller, dated June 8, 2005, can be obtained directly from PIMCO, and BCC letters to any other market participants can be obtained directly from those market participants.

21. See response to No. 4.

An Exchange notice dated June 1, 2005 is also enclosed.

If you wish to discuss any of these matters further, please feel free to call me.

Sincerely,

Anne Polaski

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

**EXHIBIT F**



**Chicago Board of Trade**

Anne Spencer Polaski
Assistant General Counsel
Legal Department

September 5, 2006

**BY MESSENGER**

Anthony Fata
Miller Faucher & Cafferty LLP
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602

Re:    Josef A. Kohen, Breakwater Trading LLC, and Richard Hershey v. Pacific
       Investment Management Company LLC, PIMCO Funds, et al.

Dear Mr. Fata:

This letter is in further response to the subpoena issued to the Chicago Board of Trade
("CBOT®" or "Exchange") on August 9, 2006 in the above-captioned matter. As I
previously told you, we had in our possession certain data that we had received from
Merrill Lynch that may be responsive to your requests 9 through 12. I had been waiting
to hear back from Merrill Lynch regarding whether it had any objection to our producing
this data in response to this subpoena. I have now enclosed a computer disk containing
this data.

Sincerely,

Anne Polaski

141 W. Jackson Blvd.
Chicago, Illinois 60604-2994
312 435-3757
Fax 312 435-3623

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

# EXHIBIT G

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 4681 | **DATE** | 10/5/2006 |
| **CASE TITLE** | Hershey et al. vs. Pacific Inv. Mgmt. Co. LLC et al. | | |

**DOCKET ENTRY TEXT**

For the reasons provided in this minute order, the Court rejects plaintiffs' objections to Magistrate Judge Michael T. Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman Sachs & Co. ("Goldman") and adopts the order in full.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

The Court rejects plaintiffs' objections to Magistrate Judge Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman because plaintiffs fail to establish that his order was clearly erroneous or contrary to law. Compliance with plaintiffs' subpoenas would be unreasonable and oppressive because plaintiffs sought to compel non-party Goldman to produce all documents for all trading activity in 10-year U.S. Treasury Notes by all of its customers (including non-PIMCO customers) during the six-month period between March 15 through September 30, 2005, which includes thousands of customers and potentially hundreds of thousands of trades. The magistrate judge did not err in finding that plaintiffs failed to demonstrate the "relevance [sic] of the non-PIMCO documents" (*see* Pl.'s Objections at 3) because such relevance is based on plaintiffs' speculation that "PIMCO's brokers may have been trading along with PIMCO to fan the flames or increase the artificial effect of PIMCO's manipulative conduct" (*id.* at 4). Finally, plaintiffs do not provide any detailed analysis in support of their final argument that the magistrate judge erred in refusing to compel Goldman to designate Rule 30(b)(6) witnesses or point to the particular legal error of which they complain. Thus, their final objection is waived. Even if the Court were to hold that plaintiffs' final objection had not been waived, which it does not, given the above findings, it was well within the magistrate judge's discretion to refuse to compel Goldman to designate Rule 30(b)(6) witnesses. For these reasons, the Court adopts Magistrate Judge Mason's order in full.

| | Courtroom Deputy Initials: | LC/LG |
|---|---|---|

05C4681 Hershey vs. Pacific Inv. Mgmt. Co. LLC et al.

Page 1 of 1

Misc. Case No.  1:06MS00489

Honorable Colleen Kollar-Kotelly

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.5
### Eastern Division

Richard Hershey, et al.

                       Plaintiff,

v.                                    Case No.: 1:05–cv–04681
                                    Honorable Ronald A.
                                    Guzman

Pacific Investment Management Compary LLC,
et al.

                       Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, September 11, 2006:

      MINUTE entry before Judge Michael T. Mason : Before the Court is Plaintiffs' Motion to Compel Rule 45 Discovery from Goldman Sachs & Company [104] ("Motion"). After reviewing the parties' briefs, the Motion is denied. Plaintiffs argue that PIMCO's brokers "... may have been trading along with PIMCO to fan flames or increase the artificial effect of PIMCO's manipulative conduct." Plaintiffs are attempting to embark on a classic fishing expedition and have failed to demonstrate that the non–PIMCO related discovery is relevant. Goldman Sachs is not a party to this case, and we decline to compel Goldman Sachs to collect, review and produce sensitive documents regarding its non–PIMCO accounts based upon Plaintiffs' pure speculation. For the same reason, we decline to compel Goldman Sachs to designate a 30(b)(6) witness to testify about non–PIMCO accounts. Accordingly, Plaintiffs' Motion to Compel is denied. [104]Goldman Sachs' Motion for Leave to File a Sur–Reply Brief is moot.[135] No appearance required on the motion hearing date, September 12, 2006. Mailed notice(tlp)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

IN RE SUBPOENA TO THE                    )
COMMODITY FUTURES                        )    Misc. Case No.  1:06MS00489
TRADING COMMISSION                       )
                                         )    Honorable Colleen Kollar-Kotelly
_____)
                                         )
JOSEF A. KOHEN, BREAKWATER               )
TRADING LLC, and RICHARD                 )
HERSHEY,                                 )
                                         )
        Plaintiffs                       )
                                         )
        v.                               )
                                         )
PACIFIC INVESTMENT MANAGEMENT            )
COMPANY LLC, PIMCO FUNDS, and            )
JOHN DOES 1-100                          )
                                         )
        Defendants.                      )
_____)

## ORDER

UPON CONSIDERATION of the Chicago Board of Trade's Motion to Quash in

the above-captioned matter, any opposition thereto, the record herein and for good cause

shown, it is hereby

ORDERED that the subpoena served on the Commodity Futures Trading

Commission by Plaintiffs in *Hershey, et al. v. Pacific Investment Management Co., LLC,*

*et al.,* Case No. 05 C 4681 (N.D. Ill.) is quashed to the extent that it would require

disclosure of:

    (a)    large trader reports concerning or relating to United States Ten Year
           Treasury Note futures contracts filed by CBOT market participants with
           the Exchange and the Commission (Request No. 1); and

(b)    A daily transaction log of all transactions in June 2005 Ten Year Treasury Note futures contracts in chronological order, from January 1, 2005 through the June 2005 expiration. (Request No. 9).

ENTERED this _____day of _____, 2006.

_____
United States District Judge