RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

2006 DEC 14 PM 5: 51

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| IN RE SUBPOENA TO THE ) <br> COMMODITY FUTURES TRADING ) <br> COMMISSION ) <br> ------------------------------------------------------------) <br> JOSEF A. KOHEN, BREAKWATER ) <br> TRADING LLC, and RICHARD HERSHEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PACIFIC INVESTMENT MANAGEMENT ) <br> COMPANY LLC, PIMCO FUNDS, and ) <br> JOHN DOES 1-100, ) <br> ) <br> Defendants. ) | Case No. 1:06MS00489 <br><br> Judge Colleen Kollar-Kotelly <br><br> ORAL ARGUMENT REQUESTED |

**MOTION BY NON-PARTY CLEARING MEMBERS OF**
**THE CHICAGO BOARD OF TRADE**
**TO JOIN IN MOTIONS TO QUASH SUBPOENA SERVED ON**
**THE COMMODITY FUTURES TRADING COMMISSION**

Non-party clearing members of the Chicago Board of Trade (the "CBOT") Banc of

America Securities LLC; Bear, Stearns & Co. Inc.; Calyon Financial Inc.; Citigroup Global

Markets Inc.; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; Fimat USA,

LLC; Goldman, Sachs & Co.; J.P. Morgan Futures Inc.; Lehman Brothers Inc.; Merrill Lynch

Pierce Fenner & Smith Inc.; Morgan Stanley & Co. Incorporated; Prudential Financial

Derivatives, LLC; UBS Securities LLC (collectively, the "Clearing Members"), and their U.S.

and foreign affiliates, through their undersigned counsel, respectfully join in the motions of the

Board of Trade of the City of Chicago, Inc. (the "CBOT"), Citadel Investment Group, L.L.C.

("Citadel"), and Ronin Capital, L.L.C. ("Ronin") to quash the September 5, 2006 subpoena for

production of commercially sensitive documents and information relating to the Clearing

Members, their affiliates, and their respective customers. The subpoena was issued by Plaintiffs through this Court and served on the United States Commodity Futures Trading Commission (the "CFTC") in connection with *Hershey, et al. v. Pacific Investment Management Company LLC, et al.*, No. 05 C 4681, pending in the United States District Court for the Northern District of Illinois (the "CFTC Subpoena"). The Clearing Members seek to join in these Motions to Quash under Fed.R.Civ.P. 45(c)(3). In support of this Motion, the Clearing Members state as follows:

1.      The underlying action concerns PIMCO's trading of the June 2005 10-Year Treasury Note futures contract on the CBOT. The Clearing Members are all registered with the CFTC as futures commission merchants ("FCMs") pursuant to 7 U.S.C. § 6d(a)(1). FCM registration permits the Clearing Members to act as brokers for their respective customers. In that capacity, the Clearing Members submit transactions made by customers (as well as trades made for the Clearing Members' and their affiliates' own accounts) to the CBOT's clearinghouse which, in turn, is responsible for the daily payment and collection of gains and losses to and from buyers and sellers of futures contracts traded on the CBOT. Because a market participant that knows the trades and positions of others is in a position to exploit that information to its own advantage, information about trades and positions is held in the strictest confidence by the Clearing Members, and is disclosed to the CFTC only to the extent required by law, *see* 17 C.F.R. Parts 15 and 17, and to the CBOT only to the extent required by the rules of the CBOT and its clearinghouse.

2.      Virtually all of the Clearing Members individually received broad subpoenas from Plaintiffs in the spring of 2006. Those subpoenas sought sweeping confidential customer and proprietary trading information. Those Clearing Members each objected to the scope of these

subpoenas, and Plaintiffs served a second set of broad subpoenas on those Clearing Members in the summer of 2006. Many of the subpoenaed Clearing Members then produced to Plaintiffs thousands of pages of responsive documents related only to PIMCO, the subject of Plaintiffs' claims, but otherwise continued to object to the scope of the subpoenas and the production of any non-PIMCO related documents.

3. In August 2006, Plaintiffs filed a Motion to Compel Production of documents pursuant to the two subpoenas they had previously served on Goldman, Sachs & Co. ("Goldman") in the Northern District of Illinois (the "Goldman Subpoenas"). The Goldman Subpoenas, which Magistrate Judge Michael Mason and Judge Ronald Guzman (collectively, the "Presiding Judges") held to be overbroad and, thus, refused to enforce, were substantially *narrower* in scope than the CFTC Subpoena. (Orders are attached as Exhibits A and B.) For example, while the Goldman Subpoenas requested documents from March 15, 2005 through September 30, 2005, the CFTC Subpoena requests documents for the time period January 1, 2005 to September 30, 2005. As noted in Ronin's Motion to Quash, "Plaintiffs have already been chastised ... for serving an 'unreasonable and oppressive' non-party subpoena." (Ronin Motion at 5.) Because of this, the Clearing Members respectfully submit that the far broader CFTC Subpoena cannot survive the standards applied to the narrower Goldman Subpoenas that have already been struck down as overbroad and burdensome.[1]

4. In a subsequent Order dated December 8, 2006, Magistrate Judge Mason allowed Plaintiffs to obtain certain large trader reports from the Chicago Board of Trade ("CBOT"). Magistrate Judge Mason ordered disclosure of those large trader reports that the CBOT received between April 30 and July 10, 2005 insofar as they related to the June 2005 U.S. Ten Year

---

[1] Judge Guzman's Order on the Goldman Subpoenas found that those narrower subpoenas implicated information relating to "thousands of customers and potentially hundreds of thousands of trades." *See* Exhibit B.

Treasury Note futures contract (a fraction of what had been requested by plaintiffs), and disallowed Plaintiffs' request for production of any market participants' oral or written complaints to the CBOT about the June 2005 contract. (Order attached as Exhibit C.) The Clearing Members believe that Judge Mason failed to appreciate fully the wide scope and potential impact of the production of large trader reports, and it is the Clearing Members' understanding that the CBOT intends to move for reconsideration or review of the Magistrate Judge's December 8, 2006 Order to the extent it orders disclosure of any large trader reports.

5.      The Clearing Members object to the subpoena served on the CFTC for the same reasons expressed in the motions filed in this Court by the CBOT, Citadel and Ronin. The CFTC Subpoena would require the production of documents and information beyond the scope of the decisions by the Presiding Judges. *See, e.g., Common Cause v. Judicial Ethics Comm.*, 473 F.Supp. 1251, 1253 (D.D.C. 1979) (refusing to subject "one party to conflicting orders from two courts of comparable jurisdiction and authority").

6.      While the entirety of the CFTC Subpoena is overbroad and seeks confidential and commercially sensitive information related to Clearing Members, their affiliates and their respective customers, two categories of requested information are particularly troublesome to the Clearing Members. First, the production of all "large trader reports" by the CFTC would disclose highly confidential and proprietary commercial information of non-party market participants.[2] The excessive scope of this request, and the need for the Clearing Members to seek protection from this court, is further illustrated by the CFTC's statement that "there were 280 reportable traders" who are potentially affected by the CFTC Subpoena. (CFTC Motion to

---

[2] The CFTC's large trader reporting system requires Clearing Members and, where applicable, their overseas affiliates (so-called "foreign brokers") to provide daily reports to the CFTC relating to their and their customers' trades and positions, as well as confidential and proprietary information relating to reportable ("large") traders' business and commercial intentions. 17 C.F.R. §§ 15.01, 17.00, 18.01, 18.04.

Stay at 3.)  The Clearing Members respectfully disagree with Magistrate Judge Mason's Order and believe that it does not take into account the breadth of this request, the confidential and sensitive nature of the information requested, and the number of non-parties (including, in addition to the Clearing Members, their customers, their affiliates and their affiliates' customers) that will be significantly and adversely affected by the disclosure of this information.

7.    Second, the production of daily trading data would result in the disclosure of information related to every single transaction executed or cleared by any of the Clearing Members for themselves, their affiliates and their respective customers.[3]  Trading data is ordinarily held in strict confidence because it can be used, even after the fact, to "reverse engineer" a market participant's trading strategies and exploit that information to that person's disadvantage.  *See* 17 C.F.R. § 155.3(b)(1) (futures commission merchant may not disclose customer orders except as necessary for the effective execution of the order or in response to regulatory request).

8.    Both large trader reports and daily trading data are extremely sensitive and are ordinarily not disclosed by the CFTC.  *See* 7 U.S.C. § 12(a) (except as may be specifically authorized, CFTC may not publish data and information that would separately disclose the business transactions or market positions of any person, trade secrets or names of customers); 17 C.F.R. §§ 145.5(c)(1), (d)(1)(ii)-(vi) (exemptions from Freedom of Information Act disclosure requirements).  The Clearing Members provide such information to the CFTC and CBOT, as required by applicable regulations, with the expectation that they will hold it in strict confidence. Under no circumstances should the CFTC disclose this information in the absence of a showing of substantial need pursuant to Rule 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure.

---

[3] The CBOT points out that this would involve over *three million* separate transactions and nearly *sixty million* separate contracts.  (CBOT Motion at 4.)

Indeed, as the CFTC correctly notes, Plaintiffs' purported need to identify class members is not credible given that their designated class members include only those who traded the June 2005 contract from May 9 – June 30, 2005.  Accordingly, Plaintiffs have not made, and can not make, a showing of their need for trading information that precedes May 9, 2005 or that follows June 30, 2005.

9.      Though Plaintiffs resist Citadel's standing to file a Motion to Quash, Citadel and other non-parties like the Clearing Members have standing to challenge the CFTC Subpoena under Fed.R.Civ.P. 45(c)(3)(B)(i): "If a subpoena requires the disclosure of a trade secret or other confidential research, development, or commercial information ... the court may, to protect a person subject to or *affected by the subpoena*, quash or modify the subpoena."  (emphasis supplied.)  The Clearing Members, like Citadel, are non-parties who are "affected by" the CFTC Subpoena because it calls for the production of sensitive and confidential material of the Clearing Members, their affiliates, and their respective customers.  As such, the affected entities have standing to challenge the CFTC Subpoena under Rule 45.  Moreover, because the information contained in the documents originated with the Clearing Members, they are particularly well-situated to make determinations regarding the sensitivity and confidentiality of responsive material.

10.     Principles of comity and judicial economy require that Plaintiffs not be able to obtain from the CFTC the very same documents and information that were sought under subpoenas that have already been struck down as "unreasonable and oppressive" or otherwise limited by the Presiding Judges in the underlying civil action in Illinois.  *See, e.g., Exxon Corp. v. U.S. Dept. of Energy*, 594 F.Supp. 84, 91 (D. Del. 1984) (district court, despite having jurisdiction, refused to "review, enjoin, or otherwise interfere" with a sister federal district court

that had previously been involved in the action); *Common Cause*, 473 F.Supp. at 1252-53 (interests of comity required court to respect the "binding nature" of an order issued by a sister federal district court).

11.    Accordingly, the Court should grant the motions to quash the CFTC Subpoena. In light of the CBOT's imminent challenge of the recent Order of December 8, 2006 in the underlying action in Illinois, the Presiding Judges there have not conclusively decided the scope of the production of large trader reports that the CBOT will produce to Plaintiffs.  Therefore, to the extent the Court decides not to grant the pending motions to quash the CFTC Subpoena, any decision by this Court on the pending motions should, at a minimum, await the definitive ruling by the Presiding Judges on the CBOT production in Illinois.

WHEREFORE, for the foregoing reasons and for the reasons given in the pending Motions to Quash filed by the CBOT, Citadel and Ronin, the undersigned non-party Clearing Members respectfully request that this Court grant the Motions to quash the subpoena that was served on the CFTC.  In the alternative, the Clearing Members request that this Court defer ruling on the pending Motions to quash the CFTC Subpoena until the Presiding Judges in Illinois first rule on the CBOT's challenge of the December 8, 2006 Order.

Respectfully submitted,

Dated:  December 14, 2006

One of the Attorneys for the Clearing Members

Brian H. Corcoran (Bar No. 456976)
Katten Muchin Rosenman LLP
1025 Thomas Jefferson St., N.W.
East Lobby - Suite 700
Washington, D.C.  20007-5201

Kenneth M. Rosenzweig
Alexander S. Vesselinovitch
Bryan F. Stroh
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661
312-902-5200


*- On behalf of the Clearing Members -*

Banc of America Securities LLC
Bear, Stearns & Co. Inc.
Calyon Financial Inc.
Citigroup Global Markets Inc.
Credit Suisse Securities (USA) LLC
Deutsche Bank Securities Inc.
Fimat USA, LLC
Goldman, Sachs & Co.
J.P. Morgan Futures Inc.
Lehman Brothers Inc.
Merrill Lynch Pierce Fenner & Smith Inc.
Morgan Stanley & Co. Incorporated
Prudential Financial Derivatives, LLC
UBS Securities LLC

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 2.5
### Eastern Division

Richard Hershey, et al.

                                              Plaintiff,

v.                                                        Case No.: 1:05−cv−04681
                                                          Honorable Ronald A.
                                                          Guzman

Pacific Investment Management Company LLC,
et al.

                                              Defendant.
_____

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, September 11, 2006:

      MINUTE entry before Judge Michael T. Mason : Before the Court is Plaintiffs' Motion to Compel Rule 45 Discovery from Goldman Sachs & Company [104] ("Motion"). After reviewing the parties' briefs, the Motion is denied. Plaintiffs argue that PIMCO's brokers "... may have been trading along with PIMCO to fan flames or increase the artificial effect of PIMCO's manipulative conduct." Plaintiffs are attempting to embark on a classic fishing expedition and have failed to demonstrate that the non−PIMCO related discovery is relevant. Goldman Sachs is not a party to this case, and we decline to compel Goldman Sachs to collect, review and produce sensitive documents regarding its non−PIMCO accounts based upon Plaintiffs' pure speculation. For the same reason, we decline to compel Goldman Sachs to designate a 30(b)(6) witness to testify about non−PIMCO accounts. Accordingly, Plaintiffs' Motion to Compel is denied. [104]Goldman Sachs' Motion for Leave to File a Sur−Reply Brief is moot.[135] No appearance required on the motion hearing date, September 12, 2006. Mailed notice(tlp)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**EXHIBIT B**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 4681 | **DATE** | 10/5/2006 |
| **CASE TITLE** | Hershey et al. vs. Pacific Inv. Mgmt. Co. LLC et al. | | |

### DOCKET ENTRY TEXT

For the reasons provided in this minute order, the Court rejects plaintiffs' objections to Magistrate Judge Michael T. Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman Sachs & Co. ("Goldman") and adopts the order in full.

■[ For further details see text below.]    Docketing to mail notices.

## STATEMENT

The Court rejects plaintiffs' objections to Magistrate Judge Mason's order denying their Motion to Compel Rule 45 Discovery from Goldman because plaintiffs fail to establish that his order was clearly erroneous or contrary to law. Compliance with plaintiffs' subpoenas would be unreasonable and oppressive because plaintiffs sought to compel non-party Goldman to produce all documents for all trading activity in 10-year U.S. Treasury Notes by all of its customers (including non-PIMCO customers) during the six-month period between March 15 through September 30, 2005, which includes thousands of customers and potentially hundreds of thousands of trades. The magistrate judge did not err in finding that plaintiffs failed to demonstrate the "relavance [sic] of the non-PIMCO documents" (*see* Pl.'s Objections at 3) because such relevance is based on plaintiffs' speculation that "PIMCO's brokers may have been trading along with PIMCO to fan the flames or increase the artificial effect of PIMCO's manipulative conduct" (*id.* at 4). Finally, plaintiffs do not provide any detailed analysis in support of their final argument that the magistrate judge erred in refusing to compel Goldman to designate Rule 30(b)(6) witnesses or point to the particular legal error of which they complain. Thus, their final objection is waived. Even if the Court were to hold that plaintiffs' final objection had not been waived, which it does not, given the above findings, it was well within the magistrate judge's discretion to refuse to compel Goldman to designate Rule 30(b)(6) witnesses. For these reasons, the Court adopts Magistrate Judge Mason's order in full.

| | | Courtroom Deputy Initials: | LC/LG |
|---|---|---|---|

**EXHIBIT C**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 05 C 4681 | **DATE** | 12/8/2006 |
| **CASE TITLE** | Hershey vs. PIMCO | | |

**DOCKET ENTRY TEXT**

As stated in further below, Plaintiffs' Motion To Compel Rule 45 Discovery From The Chicago Board Of Trade [160] is granted in part and denied in part. The Chicago Board of Trade must produce responsive discovery before 12/29/06 subject to Hershey and the CBOT entering into a protective order.

■[ For further details see text below.]                                          Notices mailed by Judicial staff

## STATEMENT

This matter is before the Court pursuant to a Motion to Compel ("Motion") Rule 45 Discovery from the Board of Trade of the City of Chicago ("CBOT" or "Board") [160] filed on behalf of Plaintiffs Breakwater Trading LLC and Richard Hershey (collectively, "Hershey" or "plaintiffs"). After reviewing the Motion, Response and Reply briefs, the Motion is granted in part and denied in part.

In a subpoena issued to the CBOT on March 3, 2006, Hershey sought production of materials in response to Request no. 1 and a portion of Request no.6. Request no.1 seeks production of all large trader report forms ("large trader reports") related to the June 2005 U.S. Ten Year Treasury Note futures contract for the period between April 30 through July 10, 2005. A portion of Request no. 6 seeks written complaints and notes and memos reflecting oral complaints received by the CBOT from May 1 through June 30, 2005 that the June contract was being manipulated or squeezed ("complaints"). We note that in the Reply brief, Hershey limited the discovery requests that it seeks to those set forth above.

The Board is a non-governmental organization and is not a party to this action. The disputed discovery is sought for discovery purposes in connection with plaintiffs' allegations that the defendants manipulated prices of June 2005 U.S. Ten Year Treasury Note futures contracts on the CBOT and the cheapest to deliver U.S.Treasury Note underlying the June 2005 contract in violation of Sections 9(a), 22(a) and 22(a)(1) of the Commodity Exchange Act, 7 U.S.C. §§ 13(a), 25(a) and 25(a)(1). The Board resists producing the large trader reports and the complaints and argues that the discovery Hershey seeks is overbroad and burdensome to produce. Aside from conclusory statements, the Board has failed to adequately articulate why the discovery requests are overbroad or burdensome to produce. Accordingly, CBOT's objections are overruled.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

**STATEMENT (CONT.)**

The CBOT also argues that the discovery is subject to the qualified investigatory privilege. *See Apex Oil v. DiMauro*, 110 F.R.D. 490 (S.D.N.Y. 1985); *Ross v. Bolton*, 106 F.R.D. 22 (S.D.N.Y. 1985). A governmental body asserting the investigatory privilege must make a specific showing before the court will consider the privilege to have been asserted properly. *In re Sealed Case*, 272 U.S. App. D.C. 314, 856 F.2d 268, 270 (D.C. Cir. 1988) (explaining that in order for the SEC to sustain a claim of investigatory privilege: "(1) there must be a formal claim of privilege by the hand of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.") (citing *Black v. Sheraton Corp. of America*, 184 U.S. App. D.C. 46, 564 F.2d 531, 542-43 (D.C. Cir. 1977)); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 238 U.S. App. D.C. 190, 738 F.2d 1336, 1341-42 (D.C. Cir. 1984)).

Where a non-governmental self-regulatory entity has asserted the investigatory privilege on the basis of the public interest in preserving the ability of self-regulatory bodies to function effectively, these requirements appear to have been applied less rigorously, if at all. *DGM Invs., Inc. v. N.Y. Futures Exchs., Inc.*, 224 F.R.D. 133, 139-140 (S.D.N.Y. 2004) (citing *In re NASD*, 1996 U.S. Dist. LEXIS 10101, No. 96-0518, 1996 WL 406826, at *2 (E.D. La. July 18, 1996) (weighing the NASD's assertion of privilege against the movants' need without addressing any of the factors identified in Sealed Case concerning the adequacy of the assertion of privilege); *Ross*, 106 F.R.D. at 24 (reaching the merits and balancing the competing interests without evaluating the sufficiency of the NASD's claim of privilege); *cf. In re Adler, Coleman, Clearing Corp.*, 1999 WL 1747410, at *3 (S.D.N.Y. 1999) (reciting the prerequisites established in Sealed Case but proceeding to a determination without explicitly considering whether the requirements had been met)). Hershey contests the adequacy of the CBOT's assertion of privilege.

In this case, the CBOT asserted that the large trader reports and the complaints are protected by the investigatory privilege because they are obtained in the course of its market surveillance responsibilities. The Board claims that it is crucial to maintain the confidentiality of the information that it obtains in connection with market surveillance in order to encourage market participants to cooperate in providing information to the Board. The CBOT claims that disclosure would hinder the CBOT's ability to obtain the information that it needs from market participants-which is essential to its ability to conduct effective surveillance of its markets. The CBOT additionally argues that Hershey has failed to show an extraordinary need to obtain the disputed discovery or that the disputed discovery is not available from other sources.

There is a "strong public interest in maintaining the integrity of effective industry self-regulation." *Ross*, 106 F.R.D. at 24. This proposition justifies the limited protection for investigative files relating to ongoing investigations, and the rationale for this protection rests in great part on the notion that protection is necessary to encourage cooperation with internal investigations in general, *see, e.g., Apex Oil*, 110 F.R.D. at 496, and to prevent the premature disclosure of factual information or investigative strategy related to a particular ongoing investigation. *See, e.g., In re Adler*, 1999 WL 1747410 at *5. Even if we consider market surveillance to be the equivalent of an ongoing investigation or disciplinary proceeding, the CBOT has not demonstrated why this rationale ought to extend to the large trader reports. Indeed, the CBOT has failed to establish that harm might result as to future investigations if the large trader reports are produced to Plaintiffs, particularly because the reports are not voluntary, but required to be submitted to the CBOT and the CFTC. (Hershey's Reply, p.2, CBOT's Response, p.5). Accordingly, the CBOT has not established that the large trader reports are protected from discovery by the qualified investigatory privilege.

**STATEMENT (CONT.)**

Hershey has demonstrated that they have a particularized need for the large trader reports.[1]  Given the magnitude of this case, the large trader reports will help identify other potential class members and help plaintiffs' experts in the development and preparation of class-wide damage models.  Hershey has narrowed the time period of the requested large trader reports to those received by the CBOT from April 30 through July 10, 2005.  Although Hershey could obtain the same information by issuing subpoenas to approximately 87 CBOT clearing firms, compelling the CBOT to disclose the large trader reports will streamline the discovery process given the short time left to complete discovery.  Therefore, Hershey's Motion is granted as to the large trader reports subject to Hershey and the CBOT entering into a protective order.  CBOT must produce the large trader reports before 12/29/06.

As to the complaints, CBOT argues that it is crucial to maintain the confidentiality of the information that it obtains in connection with market surveillance in order to encourage market participants to cooperate in providing information to the Board and to cooperate with internal investigations in general.  This argument is persuasive.  The CBOT has an interest in both encouraging cooperation and in preventing the premature disclosure of factual information that may jeopardize its efforts in connection with market surveillance.  *See, e.g., In re Adler*, 1999 WL 1747410, at *5.  We will not compel the CBOT to disclose copies of any written complaints or copies of notes or memos of oral complaints.  The Motion is denied as to the complaints.

---

[1]As this Court understands it, the large trader reports contain data not analysis or opinion.